MARY PRATTE *et al.*, Appellants, *v.* RALPH COFFMAN *et al.*, Respondents.

*Witness—Adverse party.*—The party called as a witness for his adversary must not only be adverse upon the record but adverse also in interest. Evidence may be given to show the nature and character of his interest, without examining him upon his *voir dire.*

*Evidence—Declarations.*—Upon an inquiry into the condition of a testator's mind, his declarations, although made some time prior to the making of his will, are admissible. But on the question of fraud in obtaining the will, they are admissible only when made so near to the time of the execution of the will as to constitute part of the *res gestæ*

*Jury—Misconduct.*—Generally, courts will not receive the affidavits of jurors to impeach their verdict or to show misconduct on their part.

## Appeal from Madison Circuit Court.

The facts are sufficiently stated in the opinion. The following are the instructions given for plaintiffs:

1. If the jury believe from the evidence that the mind of Joseph Coffman, deceased, was so impaired by sickness, age, or any other cause, at the time of the execution of the instrument of writing produced, purporting to be his will, as to subject him to the dominion and control of the said defendant, John Coffman, and that the said John Coffman exercised such a power and control over the mind of the said Joseph Coffman in the disposition of his property by said instrument as to destroy his liberty and free agency and cause it to be made to suit the purposes of the said John Coffman and not his own, then they will find the issue for the plaintiffs.

2. Although imbecility of mind and undue influence are neither to be presumed in the absence of proof, yet each may be inferred and established by circumstances, such as the acts, words, conditions, relations and circumstances of the parties each to the other.

3. If the jury believe from the evidence that John Coffman procured the making of the instrument in question by Joseph Coffman by frequent importunities, which, on account of his weakness and infirmity of mind, he could not resist, and for the sake of peace yielded to his wishes and made it different from what he had intended and would have done but from that influence, then they must find that it is not the will of Joseph Coffman.

Defendants' instructions given:

1. If the jury believe that Joseph Coffman was, at the time he signed the writing produced and purporting to be his last·

will and testament, of sound mind, and that he signed the said writing and published the same as his last will and testament without being constrained thereto by John Coffman, then they must find that the writing produced is the will of said Joseph Coffman.

2. It was not unlawful for John Coffman, by honest intercession and persuasion, to procure the signing and publishing by Joseph Coffman of the writing produced as his last will, if the same was signed and published by the said Joseph Coffman when of sound mind freely and without being constrained thereto by said John Coffman.

3. Unless the jury believe that John Coffman exercised over the mind of Joseph Coffman, at the time the said Joseph Coffman signed the writing produced, such an influence as destroyed the free agency of said Joseph, they must find that the writing produced is the will of said Joseph Coffman, deceased, unless they also find that he was of unsound mind at the time of signing the same.

Court's own instructions:

1. If the jury find the writing mentioned in the plaintiffs' petition is the last will and testament of Joseph Coffman, deceased, the form of the verdict will be as follows: "We the jury find the writing mentioned in the plaintiffs' petition is the last will and testament of Joseph Coffman, deceased, in manner and form as defendants have alleged."

2. If the jury find the writing is not the last will and testament of Joseph Coffman, deceased, the form of the verdict will be as follows: "We the jury find the writing mentioned in the plaintiffs' petition is not the last will and testament of Joseph Coffman, deceased, in manner and form as the defendants have alleged."

J. W. Noell and Fox, for appellants.

B. A. Hill, Robbins, and A. Burwell, for respondents.

BAY, Judge, delivered the opinion of the court.

Plaintiffs, who were heirs at law of Joseph Coffman, de-

ceased, filed their petition in the Circuit Court of Ste. Gene-
vieve county, at the May term, 1858, against Ralph Coffman
et al., also heirs at law, to contest the validity of the last
will and testament of said Joseph Coffman, deceased. The
suit was brought under our statute of wills, and in the mode
therein prescribed. The petitioners attack the will upon two
grounds: First, that at the time of making said will said
Coffman was not of sane and disposing mind; second, that
said will was made and procured through an undue influence
exercised upon the mind of the testator by John Coffman, his
son and largest devisee under the will. John and Ralph
Coffman filed separate answers, denying all the material al-
legations in the petition, and the infant defendants answer
by their guardian *ad litem*, denying any knowledge of the mat-
ters and things contained in the petition.

By consent of parties, the venue was changed to the county
of Madison, in the tenth judicial circuit. Upon the trial a
verdict was rendered for the defendants, whereupon the plain-
tiffs filed their motion for a new trial, which being overruled,
the cause is brought here by appeal.

During the progress of the trial, many exceptions were ta-
ken to the ruling of the court, but we shall only notice such
as seem to be chiefly relied upon by the appellants for a re-
versal of the judgment.

The plaintiffs proposed to examine as a witness Hiram
Blackledge, one of the defendants, and a son-in-law of the
testator, who was objected to upon the ground of incompe-
tency; and to lay a proper foundation for the objection, the
other defendants read in evidence the will, and also the in-
ventory and appraisement of the estate, to the introduction
of which plaintiffs objected. The court admitted these pa-
pers in evidence, whereupon the plaintiffs offered to examine
the witness on his *voir dire* touching his interest in the event
of the suit; but the court refused, and the witness was held
to be incompetent and therefore excluded, to which ruling of
the court the plaintiffs duly excepted.

There is no force in the objection to the introduction of the

will and inventory, for they had been previously read in evidence by the plaintiffs, and it was competent for the court to examine them for the purpose of ascertaining the extent and character of the interest of the witness.

Our code does not exclude a witness by reason of any interest he may have in the event of the action, but it does exclude him if he is a party to the action, or if the action is prosecuted or defended for his immediate benefit, subject, however, to this exception, that a party may compel any adverse party or person for whose benefit the action is prosecuted or defended, to testify at the trial or by deposition as a witness, in the same manner, and subject to the same rules, as witnesses.

But he must be an *adverse party*, not simply an opposing party upon the record. It is immaterial what position he occupies upon the record, his interest must be *adverse* to the party calling him. Any other construction of the statute would authorize a party to testify in his own behalf, and open the door to the worst species of fraud and imposition. Thus A., B. and C. may be jointly and equally interested in setting aside a will; but, by an understanding and agreement between them, A. will institute the proceeding and make B. and C. defendants for the purpose of making them witnesses, or introducing their declarations in evidence.

The statute neither admits or contemplates anything of the kind. The question, therefore, to be detemined is whether the witness was interested adversely to the will. If so, then he was clearly incompetent to testify against those who were endeavoring to maintain it. To determine this question, no better evidence could be furnished than the will, together with the inventory and appraisement of the estate, for they would undoubtedly show whether any advantage would accrue to the witness by the defeat of the will. It may be proper here to remark that the testator left a very large estate, consisting chiefly of lands and slaves, the personal estate alone amounting to near one hundred thousand dollars. By the will, a large amount of real estate, together

with twenty-seven slaves, are given to Mildred Blackledge, a daughter of the testator, and wife of the proposed witness, for and during her natural life, and after her death to the heirs of her body living at the time of her death; but if she should die leaving no such heirs of her body surviving her, or if surviving her they shall die before arriving at the age of twenty-one years, leaving no issue capable of taking, according to the provisions of the will, then the property so devised is to revert to and become vested in the testator's own right heirs.

It is very manifest, therefore, that if the will is held valid, Hiram Blackledge can acquire no right whatever to the property ; but if it is set aside, he will become entitled to his wife's share in the personalty absolutely, and may acquire an interest in the lands descending to her. His interest is therefore adverse to the will, and adverse to his co-defendants, who are endeavoring to maintain it, and for that reason he was clearly incompetent as a witness.

Another point made by the appellants is that the court permitted to be given in evidence declarations and statements made by the testator prior to the execution of the will. There is no branch of the law of evidence more complicated and unsettled than that which undertakes to define the extent to which the declarations of a testator may be given in evidence to invalidate his will. Upon an inquiry into the condition of the testator's mind, his declarations, though made some time prior to the execution of the will, are clearly admissible, not as evidence of the facts stated, but as important to show the operations of his mind. But on a question of fraud in obtaining a will, they are admissible only when made so near to the time of the execution of the will as to become a part of the *res gestæ*. (1 Jamison on Wills, 77 ; 2 Greenleaf's Ev. 690 ; 7 Serg. & R. 90.)

In this case we are relieved from the necessity of criticising the ruling of the court with respect to the declarations and statements of the testator, for the plaintiffs had invited this character of testimony by first introducing it themselves, and

it ill becomes them to complain that the court extended the same latitude of inquiry to the defendants.

We are unable to find any substantial objection to the instructions given by the court. All that the plantiffs asked were given, and three on the part of the defendants, and, taking them together, they clearly enunciated the law applicable to the case. They were certainly as favorable to the plaintiffs as the facts and circumstances of the case warranted.

Misconduct on the part of the jury is also alleged as a ground for the reversal of the judgment. Upon the hearing of the motion for a new trial, Henry Ellis was sworn as a witness and testified that he was an attorney-at-law and kept his office in the courthouse; that the sheriff took the jury to his office, and some time after the jury had retired he had occasion to go to his office to procure .a paper, and as he reached the door he thought he heard some one reading, and when he got inside found some of the jurors with law books in their hands; thinks they were copies of the statutes, but witness did not examine them. Witness further stated that one of the jurors had a book open and thinks he was reading from it. He heard him say something about the statute of wills; witness kept his law books in his office. The plaintiffs then introduced four of the jurors and offered to prove by them that after the jury had retired to their room, and while they were considering the case, some of the jurors read aloud from some law books upon the subject of wills and upon the questions involved in the case, but the court refused to permit them to testify upon the ground that they were incompetent to testify to misconduct or irregularity on their own part.

The courts, both in England and in this country, have ruled against the policy of receiving the affidavits of jurors to impeach their verdict, upon the ground that it would open the door for endless litigation, fraud and perjury, and might lead to consequences of a most pernicious character. (3 Graham & Waterman on New Trials, 1429.)

In Rex v. Almon, 5 J. Burrows, 2686, the affidavit of a

6—VOL. XXXIII.

juror was offered to show that he had rendered his verdict under a mistake, but Lord Mansfield refused to receive it; and in a subsequent case (Vane v. Delaval, 1 Term. R. 11) a motion was made for a rule to set aside a verdict upon an affidavit of two jurors who swore to misconduct upon the part of the jury, but the same learned judge said: "The court cannot receive such an affidavit from any of the jury-men themselves, in all of whom such conduct is a very high misdemeanor. But in every such case the court must derive their knowledge from some other source; such as from some person having seen the transaction through a window, or by some such other means."

The Supreme Court of Georgia, in a capital case, (9 Georgia, 121,) refused to receive the affidavit of a juror who swore that he was induced to agree to the verdict by the persuasion of his fellow-jurors, and by their misrepresentations as to the effect of the verdict.

In Dana v. Tucker, 4 Johns. 487, the Supreme Court of New York said: "The better opinion is, and such is the rule adopted by the court, that the affidavits of jurors are not to be received to impeach the verdict."

It is not denied but what there are authorities to the contrary, and cases can be found in the English reports where the ruling has been otherwise, prior to the revolution. So in this country, the courts of Tennessee have ruled otherwise, and a few cases can be found in other States in which such affidavits have been received.

In Waterman on New Trials, vol. 3, p. 1428, will be found a collection of cases upon this subject, and after a careful review of them the author reaches the conclusion that it is now well settled that such affidavits cannot be received.

While we are disposed to adopt the rule as a general rule of policy, still we think that cases may arise, particularly when life and liberty are at stake, which may call for a departure from the rule. As, for instance, when the court shall have reason to believe from evidence derived from other sources than the affidavit of the jurors, that there has been

such misconduct on their part as to influence their verdict, we see no good reason why the affidavit of a juror might not be received for the purpose of explaining or enlarging such evidence.

Other cases might occur which would furnish exceptions to the rule, but the case at bar is certainly not one of them. The affidavit of Ellis discloses nothing on the part of the jury that can be construed into an intentional wrong or misconduct. Nor does it appear that the act of reading from law books was suggested or influenced by any person interested in the suit. The sheriff took the jury into a room in the courthouse, probably intended as a jury room, but occupied as a law office. Books were scattered about, and the statement of the witness is that one of the jurors was reading aloud from what he supposed was the statutes of the State; heard him say something about the statute of wills.

Admitting this to be true, it is impossible to conceive how the reading of the statute of wills could in anywise have influenced their verdict. It is a statute defining the mode and manner of executing, attesting and probating wills, and furnishing a simple procedure for contesting their validity. It certainly could furnish the jury no light whatever upon the issues which they were sworn to try, and contained nothing which would tend to mislead them. We are of opinion, therefore, that the court properly refused to receive the testimony of the jurors, and that the testimony of Ellis fails to present such a case of misconduct on the part of the jury as to warrant this court in setting aside their verdict.

We can find nothing in the record of this case which furnishes the plaintiffs any reasonable ground for complaint. Upon the testimony given the jury could have found no other verdict. With the exception of Narcissus Watson, a grandson of the testator, and who, in his examination, admitted that he was strongly prejudiced against the will, and had conveyed away his interest in the estate for the sole purpose of making him a competent witness against the will, all the witnesses who make any reference to the testator's mind repre-

sent him as a man of strong and vigorous intellect, self-reliant, and who in all business transactions was more likely to influence others than to be influenced himself. Such is the character given him by his neighbors and others, some of whom had known him intimately for upwards of twenty years. Dr. Pim attended him as a physician from the commencement of his sickness till his death, a period of six or eight months, and he testified that his mental faculties were in a healthy condition during that time ; that he frequently conversed with him on various subjects and found his mind perfectly clear. Dr. Farmer, his family physician, who had known him for ten years, and who also attended him in his last sickness, testified to about the same. In fact, nearly all the witnesses, both for and against the plaintiffs, represent him as a man of sound mind even to the day of his death, and it is proper here to observe that the will was executed before the testator was confined to his bed, and while he was in the almost daily habit of riding out and attending to his business. The charge of undue influence is no better supported than the one of unsoundness of mind.

Upon the whole, we find no such error in the proceedings of the court below as will warrant this court in disturbing the judgment.

The other judges concurring, the judgment is affirmed.