WARREN HALL v. FULTON IRON WORKS COMPANY, Appellant.—31 S. W. (2d) 81.

Division One, September 4, 1930.

*Joseph C. McAtee* for appellant.

*Al. F. Gerritzen, Mark D. Eagleton* and *James A. Waechter* for respondent.

LINDSAY, C.—This case has been certified to this court by the St. Louis Court of Appeals, upon the dissent and request of one of the judges, who deemed the ruling of the majority opinion to be in conflict with decisions of this court. The dissent, and suggested conflict, refer to the ruling of the majority opinion upon an instruction given for the plaintiff, respondent; but the cause is here for determination "as in case of jurisdiction obtained by ordinary appellate process." [Section 6, Amendment of 1884 of Article VI of State Constitution.]

It is an action for damages for personal injuries sustained by plaintiff on May 19, 1925, while he was in the employ of defendant in its foundry. Molten metal was being poured from a large ladle into a small ladle. The plaintiff had nothing to do with that operation, but at the time was engaged in other work a short distance away. During the operation mentioned, molten metal was caused to splash from the small ladle to the ground where plaintiff stood, and upon his right foot and ankle, burning and injuring the same,

He had a verdict, returned by ten of the jurors, in the sum of $1970, and the appeal is from the judgment entered thereon.

The petition alleged that the work of pouring the molten metal from the large ladle into the small ladle was being done by defendant near where plaintiff was, and that "while defendant was so doing, certain molten metal and encrustation thereof, known as 'scab,' in falling into said small ladle, caused molten metal therein to splash up and out and against plaintiff, burning and injuring him, all of which directly and proximately resulted from the negligence and carelessness of the defendant." The negligence pleaded in the two particulars submitted to the jury, was, (1) that defendant failed to exercise ordinary care to furnish plaintiff a reasonably safe place in which to work, in that, while the metal was being poured from a large ladle into a small one it was likely to be caused to fly and to strike and injure plaintiff and he was in danger, and not reasonably safe; (2) failure to exercise ordinary care to adopt and use a reasonably safe method of pouring the metal, in that, while so doing no provision was made for holding back said "scab" and preventing it falling into the small ladle, and no workmen or device was furnished for that purpose, and that without such precautions said method was dangerous and not reasonably safe, and likely to cause injuries as aforesaid, all of which defendant knew or by the exercise of ordinary care could have known. The answer was a general denial, with a plea of assumption of the risk, and the reply was a general denial.

We adopt the statement of facts found in the majority opinion of the Court of Appeals giving the circumstances under which plaintiff was injured, and the nature of the testimony for the respective parties upon that subject, as follows:

"Plaintiff was employed as a molder helper, and had been in defendant's service for three weeks when his injury was received. In the particular plant in which he was working, it was the practice for molten metal to be poured out of a cupola, into a large container or ladle having a capacity of 20,000 pounds. The large ladle was then conveyed by a crane as near as possible to the point where the metal was to be placed into the molds. At such point, the metal was emptied from the large ladle, into the smaller ones holding 150 pounds each, and held by two men. During such process the top of the large ladle would be six or seven feet above the ground, and the men carrying the small ladle would grasp it by a bar extending across the top and beyond the sides, and raise it to the height of their shoulders, whereupon the large ladle would be caused to tilt by means of a mechanical device operated by another employee.

"All witnesses agreed that as the molten metal cooled or chilled, a scum from the impurities in the iron formed over the top. By

plaintiff's evidence this scum was described as a 'scab' or slate formation which became hard. Plaintiff himself testified that it was customary for an employee termed a 'skimmer' to follow the crane, and by using a paddle, hold back the 'scab' while the metal was being poured from the large ladle into the small one. Defendant's evidence, to the contrary, was that the 'skimmer' performed such duty only when the metal was being emptied from the small ladles into the molds.

"At two o'clock in the afternoon of the day in question (though the usual time for filling the small ladles was three o'clock), two men, Richt and Donaldson, carried one of the small ladles to the large ladle to be filled. Plaintiff, at the time, was standing twenty feet from the large ladle, with his back turned toward it, and did not know, nor had he been informed, that the metal was to be poured. It was undisputed that it was no part of plaintiff's duties to assist or take part in this character of work.

"Richt, called as a witness for plaintiff, testified that when the small ladle, which he and Donaldson were holding, became half filled, a portion of the 'scab' fell from the large ladle into the small one, causing the metal to splash upon him and burn him, whereupon he released his hold, as did Donaldson, also, momentarily thereafter. When the ladle fell, part of its contents poured out and ran against plaintiff's foot, producing the injury on account of which this action was brought.

"Defendant's witnesses admitted that the small ladle was dropped, and that plaintiff was burned in the manner narrated by him, but denied that any 'scab' or scum came out of the large ladle, although it was disclosed by such witnesses that the large ladle had been filled for thirty minutes when the pouring was attempted, and that a considerable 'scab' or scum had formed during that period of time, which had been observed by the foreman who was present at the scene of activities. The operator of the large ladle did testify, however, that sometimes the 'scab' did fall. All the witnesses agreed that no 'skimmer' was present at the time plaintiff received his injury, to restrain the 'scab' from falling."

The defendant makes no point that the evidence was insufficient to make a case for the jury. The errors assigned relate to other matters.

The first error assigned is the refusal of the court to sustain defendant's motion to discharge the jury because of the admission of certain testimony over defendant's objection.

Dr. Reilly, a physician, was called by defendant, and testified that he made an examination of the plaintiff with reference to the extent and permanence of his injuries. His testimony, in many respects, was in sharp conflict with the testimony of the physician

called by the plaintiff. On cross-examination and without objection, Dr. Reilly was asked who paid him for his services in making the examination. He said: "The T. H. Mastin & Company." He was then asked who T. H. Mastin & Company was. Objection was made and overruled. The witness answered: "They are an insurance company." The witness was excused, and immediately thereafter announcements were made by respective counsel closing the case. Thereafter, defendant asked for discharge of the jury because of the admission of the testimony mentioned.

The court did not err in refusing to discharge the jury. As has just been stated, the testimony of Dr. Reilly was contradictory of the testimony for plaintiff as to the injury sustained, and tended to minimize the effect of such injuries. The testimony in question was not irrelevant or improper. The jury were entitled to know in whose interest the witness made the examination, and who paid him for his services, and everything which affected the credibility of the witness, and the weight to be given to his testimony. [Snyder v. Wagner Electric Mfg. Co., 284 Mo. 285; Jablonowski v. Modern Cap. Mfg. Co., 312 Mo. 173, 196-201; Schuler v. St. Louis Can Co., 18 S. W. (2d) l. c. 46.]

Error is next assigned in the giving of plaintiff's Instruction 1. That instruction is as follows:

"The court instructs the jury that if you find and believe from the evidence that on or about May 19, 1925, plaintiff was in the employ of defendant and was engaged in his duties in defendant's foundry in St. Louis County, Missouri, and that at a place near where plaintiff was working the defendant was engaged in pouring metal from a large ladle to a small ladle, and that some of said metal while being poured splashed to where plaintiff was working and burned and injured him, and if you further find from the evidence that in pouring said metal the defendant made no provision for holding back the incrustation known as scab (if you find that there was such scab on the metal) and that said metal was being poured without holding back the scab and without preventing it from falling into the small ladle, and if you further find that said method of pouring the metal was dangerous and not reasonably safe and was likely to cause persons thereabout, or plaintiff, to be struck and burned and injured thereby, and that defendant then knew or by the exercise of ordinary care could have known thereof, and that defendant was negligent in pouring said metal there without making any provision for holding back the scab or preventing it from falling into the small ladle (if you so find) and that plaintiff was burned and injured as a direct and proximate result of said negligence (if you so find), then the court instructs you that the plaintiff is en-

titled to recover and your verdict must be in favor of plaintiff and against defendant.''

The case is here because of the diverse views in the Court of Appeals upon this instruction. The contention is that the instruction, while authorizing a verdict for plaintiff, leaves out an element essential to plaintiff's case; that it does not require the jury to find that plaintiff's injury was caused by the falling of incrustation or ''scab'' from the large ladle into the small ladle, during the pouring operation. In the printed agrument, it is suggested it does not require a finding that the splash of the molten metal from the small ladle caused the man holding the small ladle to let go of it. It must be conceded that the instruction is not·as definite as it might be. There is conflict in the evidence, upon the· question of whether scab fell from the large ladle into the small ladle. As before stated, there was evidence for plaintiff that scab did fall into the small ladle, and that some of the metal splashed upon and burned one of the men holding the small ladle, causing him to let go, and thereupon the other man let go and molten metal splashed upon plaintiff. Defendant had testimony that no scab fell into the small ladle. The instruction does require the jury to find, that defendant was pouring metal from a large ladle into a small ladle, and connected therewith, is requirement of finding that there was incrustation or scab on the metal. The instruction further requires the finding that the metal was being poured, without holding back the scab, ''and without *preventing*'' it from falling into the small ladle; that said method of pouring the metal was dangerous and not reasonably safe; that defendant knew or by the exercise of ordinary care could have known that it was dangerous and unsafe; that defendant was negligent in pouring said metal without making any provision for holding back the scab or ''preventing it from falling into the small ladle;'' that plaintiff was burned and injured as the direct and proximate result of said negligence. While the instruction is not as definite as it might be, we think the jury must have understood that to find against the defendant, they must find there was scab on the metal, and that scab fell into the small ladle. It is true the instruction does not, in express terms, require the jury to find that scab fell into the small ladle; but, in the requirement of a finding that defendant failed to prevent scab from falling into the small ladle, we think that in order to return a verdict for plaintiff the jury understood it was necessary to find that the scab did fall into the small ladle. As men of average intelligence, they would understand that failure to ''prevent'' the occurrence hypothesized, meant failure to keep it from happening (Webster's New International Dictionary), and they were to find whether it did happen. Counsel for defendant cite cases announcing the rule that an instruction for a plaintiff purporting to cover

the whole case and directing a verdict for him, but omitting some element requisite to right of recovery, is error which is not cured by a proper instruction for defendant covering all elements of plaintiff's case, because, in such cases the instructions would be in conflict. [Heigold v. United Railways Co., 271 S. W. 773; Hall v. Coal & Coke Co., 260 Mo. 351; and other cases.] In the instant case no instruction for defendant was asked or given purporting to cover all the elements of the plaintiff's case. Defendant asked certain withdrawal instructions which the court properly refused to give. The instruction is not to be held erroneous, as omitting an essential element of plaintiff's case, or as assuming a fact about which there is conflict in the evidence.

In the dissenting opinion attention is called to Dunsmore v. Hartmann, 256 S. W. 1031, and in the brief for appellant, Jaquith v. Fayette R. Plumb, Inc., 254 S. W. 89, is cited, also the Heigold and Hall cases, supra. In the dissenting opinion the view is expressed that the opinion of the majority sustaining this instruction, is in conflict with the opinion of this court in the Dunsmore case. In the Dunsmore case the condemned instruction required a finding that certain hypothesized acts, constituted negligence, but it wholly failed to require the jury to find that the plaintiff's injury resulted from such negligence; and it was upon that ground the instruction was held erroneous. That is not true here. This instruction expressly requires a finding that the plaintiff's injuries, directly and proximately, resulted from the negligence of defendant. The instruction in the Jaquith case was held bad on several grounds (1. c. 93). One was that the instruction imposed upon defendant the absolute duty to keep the floor in a safe condition—not merely to exercise ordinary care to keep it in a safe condition. Another was that the instruction did not clearly require the jury to find that the fall of a tube on plaintiff's foot was caused by a hole in the floor. It was alleged that there were large and dangerous holes or openings in the floor. The omission in the Jaquith instruction is supplied in this case, and the objection met, by what we have said as to what the jury would understand they had to find, in finding that defendant failed to prevent the scab from falling into the small ladle. Another objection to the instruction in the Jaquith case was that in purporting to cover the whole case and directing a verdict for the plaintiff, it did not require the jury to pass upon the plea of contributory negligence. There was no such issue in this case, either in the pleadings or in the evidence. Under the provisions of Section 1513, Revised Statutes 1919, we are not to reverse the judgment except for error committed by the trial court against the appellant and materially affecting the merits of the action. The form of plaintiff's Instruction 1 is not admirable, but we think that

as the jury would understand it, it substantially presented the elements necessary to recovery by the plaintiff.

Objection is made to plaintiff's Instruction 2, which submitted the theory of negligent failure to provide plaintiff a safe place in which to work. The same sort of objection is made against Instruction 2 as that against Instruction 1, and what we have said concerning Instruction 1 substantially applies to Instruction 2.

Another complaint urged is that the verdict of the jury was a quotient verdict, and that the figure therein stated was arrived at by the jury by stating their respective figures, adding them, and dividing the total by ten. In filing the motion for a new trial defendant filed the affidavit of one of the men composing the jury, wherein the affiant stated that when the case was submitted to the jury, "the jurors took their respective figures as to the amount of liability and damages that should be assessed against the defendant, added them together, and divided the total by twelve, thereby reaching the quotient of $1970." The affidavit was made by a juror who did not sign the verdict.

The affidavit of the juror does not state, or even indicate that what the jury did in the respect mentioned, was the result of a prearranged plan, or, that there was an agreement in advance to return a verdict for the quotient so to be found. The affidavit of the juror does not afford ground for reversing the judgment, under the rules stated in Jobe's Admr. v. Weaver, 77 Mo. App. 665; Kolb v. St. Louis Transit Co., 102 Mo. App. 150, the cases cited on the point by defendant. See also 46 C. J. 150, and Pratte v. Coffman, 33 Mo. 71, and Sawyer v. Hannibal & St. Joe Railroad Co., 37 Mo. 1. c. 263, as to the general rule that a juror cannot impeach the verdict returned.

Another error assigned is the refusal of the court to grant defenaant a new trial on the ground of newly discovered evidence. In the course of his examination as to what employment plaintiff had, since his injury, and concerning his ability to work, he testified that he had worked a while for the Polar Wave Ice & Fuel Company, and had left that employment because he was unable to do the work there required, on account of the injury he had sustained. Defendant filed with the motion for a new trial the affidavit of the man in charge of the work of the Polar Wave Ice & Fuel Company, while plaintiff had been there employed, to the effect that plaintiff left that employment because there was no work there for him, and for that reason he could not be longer kept employed by that company. It appears that more than four months before the trial of the case, plaintiff's deposition was taken by counsel for defendant and in the deposition plaintiff had given his inability to work as the reason for leaving the employment of the Polar Wave Ice & Fuel Company. Under the circumstances the defendant showed a lack of due diligence.

Complaint of the refusal to sustain the motion for a new trial upon the ground stated, is without merit.

Another error assigned is the refusal of the court to discharge the jury during the argument to the jury and because of a statement made by plaintiff's counsel. During the course of his argument, plaintiff's counsel, after reference to the testimony as to the pain suffered by plaintiff, and to the matters tending to show his disability as the result of his injuries, said: "Now we ask you for $3,000. We have been obliged to keep it to that amount to keep it in this court." Counsel for defendant objected, and asked that the jury be discharged. The court stated: "I will sustain the objection. They have nothing to do with that." The defendant's counsel again asked that the jury be discharged and the court refused to do so. The jury did not return a verdict for the full amount asked in the petition; and it may be noted also, that it is not urged on appeal that the verdict is excessive. Defendant's counsel did not ask that plaintiff's counsel be reprimanded. These things considered, and considering also the discretion lodged with the trial court in such matters, and the greater opportunity of the trial court to observe and see the effect, if any, of what was said by plaintiff's counsel, we cannot say that the refusal of the court to discharge the jury, is to be regarded as reversible error.

The foregoing covers substantially all the complaints made by appellant. The judgment is affirmed. *Seddon* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion, written by our former Commissioner, the late JAMES D. LINDSAY, is adopted as the opinion of the court. All of the judges concur.