G. A. CONNER, Appellant, v. DAVID P. NEISWENDER, Respondent, No. 41634—232 S. W. (2d) 469.

Division One, September 11, 1950.

*Boyle G. Clark, William H. Becker, Robert C. Smith, Jr.,* and *Richard G. Poland* for appellant; *Clark, Boggs, Peterson & Becker* of counsel.

*Sapp & Bear* and *William H. Sapp* for respondent.

1076

■ VAN OSDOL, C.—Action for $15,000 damages for personal injuries alleged to have been sustained by plaintiff as the result of defendant's negligence in driving a golf ball from a tee on the golf course of the Columbia Country Club. A jury returned a verdict for plaintiff awarding $875 damages. Plaintiff filed a motion for a new trial on the assigned ground, among others, of inadequacy of the amount of damages awarded. The motion was overruled. Plaintiff has appealed from the ensuing final judgment, and seeks a reversal and remand for a new trial on the issue of damages only. This court has appellate jurisdiction of the case on the ground of the "amount in dispute." Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S. W. 2d 618; Coghlan v. Trumbo, Mo. App., 171 S. W. 2d 794; Section 3, Article V, Constitution of Missouri 1945, Mo. R. S. A. 1939, Const. Art. V, § 3.

Plaintiff-appellant contends he should have a new trial (on the issue of damages) because (1) the amount of the jury's award was shockingly inadequate, and (2) the trial court erred in refusing to permit him to prove that witnesses, physicians, who testified relating to his physical condition, had examined him at the request of and were paid by defendant's liability insurer.

■ In this case, as stated, plaintiff's motion for a new trial on the ground of inadequacy of the jury's award of damages has been overruled. The amount of the damages awarded plaintiff by the jury has been approved by the trial court. The case is to be differentiated from those cases in which trial courts have sustained plaintiff's motions for a new trial on the specified ground of inadequacy of the awards, in which cases the appellate courts, upon review, determined if there was substantial evidence supporting the trial court's action. See Widener v. St. Louis Public Service Co., 360 Mo. 761, 230 S. W. 2d 698; O'Shea v. Pattison-McGrath Dental Supplies, 352 Mo. 855, 180 S. W. 2d 19; Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 171 S. W. 2d 610; Hunt v. Gus Gillerman Iron &

Metal Co., 327 Mo. 887, 39 S. W. 2d 369; Wise v. Rubenstein, Mo. App., 24 S. W. 2d 203; and consult Coats v. News Corp., 355 Mo. 778, 197 S. W. 2d 958.

The question of the amount of damages is primarily for the jury. And the trial court too has some discretion in granting or refusing a new trial because of the size of the award. But if, upon review, the verdict is considered so shockingly inadequate as to .indicate that it resulted from passion and prejudice it should be set aside. In determining if the amount of award is grossly inadequate in this case, wherein the jury's verdict has been approved by the ▮ trial court, we will consider the evidence favorable to the verdict returned because it was the peculiar province of the jury on the trial and of the trial judge on the motion for a new trial to pass upon the weight of the evidence and the credibility of the witnesses, and our appellate courts do not ordinarily weigh the evidence in an action at law wherein the issues of fact have been submitted to the jury. If there was substantial evidence supporting the verdict in the amount awarded by the jury, the jury's verdict should not be disturbed by this court. With these principles in mind we will review the evidence relevant to the nature and extent of plaintiff's injuries, not only to determine whether the jury's verdict is so shockingly inadequate as to indicate passion and prejudice, but to further determine whether the trial court abused its discretion in refusing to grant plaintiff a new trial. Wilhelm v. Kansas City Public Service Co., 358 Mo. 6, 212 S. W. 2d 915; Coghlan v. Trumbo, Mo. Sup., 179 S. W. 2d 705; Cochran v. Wilson, 287 Mo. 210, 229 S. W. 1050.

Plaintiff, 44 years of age, a lessee and operator of a filling station, was struck by a golf ball which was in full flight and which had been driven by defendant from a tee about 215 yards away. The impact was behind and above plaintiff's right ear, the occipital parietal area.

Plaintiff "grabbed his head," reeled, took several steps, and fell. He lay on the ground, apparently unconscious. Blood streamed down his face. He was assisted to the clubhouse, and was later taken to the emergency room of the Boone County Hospital. His wound was dressed and treated. He remained in the hospital for two days under observation, and was then discharged. He later complained of a lack of sensation, or unusual or abnormal sensations on the right side of his head, face and eye. Plaintiff testified of these sensations under his right eye, over the top of the temple, at the side and at the back of his head. "It is like your foot being asleep. It is a dead feeling, and no sensation there." He has headaches; is nervous; has dizzy spells; and has lost thirty-five pounds in weight. He has not been able to attend to business "like I should."

Apparently, plaintiff, in falling, struck the right side of his face. His upper partial denture was destroyed, and two of the four teeth to which the denture had been clasped were split or broken. The four

teeth have been extracted. Plaintiff now wears a temporary upper plate.

Plaintiff's personal physician testified that, when he saw plaintiff at the hospital, plaintiff was bleeding from back of the ear, was confused mentally, and had suffered concussion. Examination by X ray revealed no fractures. The physician was of the opinion the impact had caused injury to plaintiff's brain and nervous tissue. At the time, and afterwards, plaintiff complained of an area of sensory paralysis on the right side of the face. At the time of the trial the regeneration of the nerves was as complete "as it will be."

Another physician, specialist in the diseases of the eye, who had treated plaintiff, testified plaintiff's eye was less sensitive to ordinary stimuli than formerly; there was a damaged sensory and motor response. Plaintiff also has astigmatism of the right eye which, the physician said, was not attributable to the injury. The physician stated plaintiff now has "20/20" vision in his left eye, "20/20 minus one" vision in his right, and "20/20 is normal."

A physician, specialist in ophthalmology, testified by deposition. He had found upon examination that plaintiff suffered loss of sensation in front of the ear and behind the central outer orbital margin on the right side; there was a tendency of the right eye to turn out in relation to the left; and there was a concentric contraction of the visual field on the right without loss of central vision. There was a partial or intermittent suppression of the vision. The doctor said the condition could have been caused by trauma, but he was of the opinion it was not. He thought the condition was due to hysteria. The optic nerve was normal; the physician found no paralysis of the lid, orbital or facial muscles. Plaintiff had no double vision, and there was no "abnormality" of the eye which the witness could "attribute to trauma."

A neurosurgeon testified, by deposition, of his examination of plaintiff. He said his explanation "of this most unusual and bizarre and rare accident was that directly by the golf ball there was impingement and contusion of the right post-auricular and major occipital nerves, resulting in anesthesia in their distribution, namely, the right posterior half of the scalp, and that by knocking the patient unconscious so that he fell on his face that the right infraorbital nerve was impinged when he hit the ground in the fall, resulting in the same way in contusion of the infraorbital nerve and hence anesthesia in that area of the face between the right eye and the right upper lip." In his neurological examination of plaintiff, the specialist found plaintiff was perfectly normal "except as to reduced appreciation of both touch and pain in an area behind" plaintiff's ear. The symtoms of the creeping dysesthesia, sometimes described as a "prickly feeling," were subjective. He thought there would be a rather satisfactory though incomplete regeneration of the nerves. "The injury will not

be completely permanent but will be partial in its end result." The anesthesia in that area "has to do only with the scalp"; there would be no impairment of plaintiff's hearing or eyesight. The contusion of the nerves would not cause any degeneration or lag of the facial muscles.

Plaintiff's reasonable expense for medical and dental treatment, dental surgery, and hospitalization amounted to $212.30; and plaintiff testified that, because of his injury, he had been obliged to pay $566.21 to extra employees to assist in the operation of his filling station.

Defendant, defendant's mother, and defendant's wife testified plaintiff visited defendant at defendant's place of business the fourth day after the occurrence. Plaintiff had on "his work clothes, and I asked him if he had been working and he said yes, he had been to work that morning, but was still taking it kind of easy. He had a little patch on his head."

There were substantial evidentiary grounds for a finding the plaintiff's injury, although initially painful and presently annoying, and permanent to some extent, was not of a serious nature in "its end result." Our case differs from Grodsky v. Consolidated Bag Co., supra; and English v. Thrower, Mo. App., 146 S. W. 2d 667, in which cases the serious nature of plaintiffs' injuries, although not conceded by defendants, was shown by plaintiffs' evidence full and fair on its face and not contradicted.

In our case there was evidence tending to show plaintiff's eyesight has not been actually impaired by his injury. There is no lag or degeneration of the facial muscles. It is reasonable to say that plaintiff's minor imperfections of vision are not due to his injury. It seems doctors were of the opinion the anesthesia of the nerves of plaintiff's scalp and face, the symptoms of which were subjective, was but superficial and did not affect his vision or hearing. At a time soon after his injury, plaintiff did not seem to consider he was seriously injured. It is true he sustained the loss of his partial denture and the teeth to which the denture had been clasped; he expended moneys for medical and dental treatment and dental surgery and hospitalization; and, giving full credence to his testimony relating to the hiring of additional employees, he had paid out a substantial sum for extra help. The jury's award was a little less than $100 in excess of the total of these expenditures. The verdict reflects the jury's view that plaintiff's injuries, although in some respects permanent and annoying, were not of permanently serious nature. The view was justified by the evidence, considered from a standpoint favorable to the verdict. Moreover, the jury (and the trial judge) saw plaintiff in and about the courtroom and on the witness stand and observed his movements, his physical appearance, and his manner of giving testimony. Considering the evidence relating to the nature and extent of plaintiff's

injury and having in mind the principles, mentioned supra, governing our consideration of such evidence, we cannot say the award was so grossly inadequate as to indicate the passion and prejudice of the jury. The jury's award, approved by the trial court, should not be disturbed.

The physicians, specialists in ophthalmology and neurosurgery, whose testimony we have examined supra, had been employed to make examinations of plaintiff by defendant's liability insurer, who was interested in the defense of the case. Sometime after the physicians had examined him, plaintiff had taken their depositions. Plaintiff, in his case in chief, announced that he offered the original of both depositions of the witnesses-physicians and offered "to read to the jury the following portions." Upon defendant's objection the trial court excluded those parts of the depositions disclosing that the physicians were employed by the insurer. The defendant's objection was on the ground "it (the proffer of parts' excluded) is an attempt to belittle or impeach his (plaintiff's) own witness' credibility." Defendant announced at the time that he offered "the whole thing" (except the parts disclosing the physicians had been employed by the insurer). The depositions (as a whole, except those parts relating to the employment of the physicians) were admitted and read into evidence. It is contended by plaintiff-appellant that the exclusion of the parts relating to the physicians' employment was erroneous. Plaintiff-appellant says the interest or bias of a witness with respect to the issues on trial, his relation to the parties, and the state of his feelings toward them are never irrelevant or collateral matters, citing Hall v. Fulton Iron Works Co., 326 Mo. 20, 31 S. W. 2d 81. In the Hall case *defendant* put a physician on the witness stand. *On cross-examination,* the witness was asked who had paid him for examining plaintiff. The witness, by his testimony, disclosed that he had been paid by the defendant's insurer. The fact affected the credibility of the witness. The trial court did not err in refusing to discharge the jury. See also Jablonowski v. Modern Cap Mfg. Co., 312 Mo. 173, 279 S. W. 89; Dodd v. Independence Stove and Furnace Co., 330 Mo. 662, 51 S. W. 2d 114; Schuler v. St. Louis Can Co., 322 Mo. 765, 18 S. W. 2d 42; Snyder v. Wagner Electric Mfg. Co. of St. Louis, 284 Mo. 285, 223 S. W. 911.

In our case *plaintiff* introduced the depositions and offered to read parts thereof. The testimony so adduced was not, of course, for impeachment, nor were the witnesses parties to the action. Plaintiff was not obliged by law to rely upon the deponents as the only witnesses by which he could prove some formal matter essential to his case. It is only in exceptional cases that a party may show the bias and prejudice of his own witness. Obviously, plaintiff's counsel believed parts of the depositions were favorable to plaintiff upon material issues. The portions were offered and read into evidence by plaintiff for the

purpose of showing the nature and extent of plaintiff's injury. A party may not arbitrarily limit the use of a deposition by selecting and introducing only those portions favorable to him. If he offers portions only, the other party may introduce other portions containing competent and relevant testimony. 4 Jones, Commentaries on Evidence, 2d Ed., § 2032, pp. 3767-3769. And as a general rule the introduction of a deposition or a part thereof by a party for any purpose other than that of contradicting or impeaching the deponent makes the deponent the witness of the party, unless the deponent is the adverse party. 16 Am. Jur., Depositions, § 113, p. 747; Vol. III, Wigmore on Evidence, 3d Ed., § 912, pp. 423-424. The justice of such a rule is demonstrated by the instant case, in our opinion. A further rule has become well established that, subject to certain exceptions, a party may not directly discredit or impeach his own witness. See Crabtree v. Kurn, 351 Mo. 628, 173 S. W. 2d 851; and Vol. III, Wigmore on Evidence, 3d Ed., §§ 897-899, pp. 385-390, for discussions of the underlying reasons of the rule. And it has been said, the extent to which an unfriendly or hostile witness or a person whose interest is adverse may be examined is a matter within the sound discretion of the trial court. Schipper v. Brashear Truck Co., Mo. Sup., 132 S. W. 2d 993; Burnam v. Chicago Great Western R. Co., 340 Mo. 25, 100 S. W. 2d 858; Zips v. Mutual Benefit Health & Accident Ass'n., Mo. App., 169 S. W. 2d 62.

In the instant case neither the witnesses-physicians (deponents) nor defendant had entrapped plaintiff or by any ▮▮▮ artifice misled him into offering the depositions, or any parts thereof. There was no element of surprise. Plaintiff must have known in advance the contents of the depositions, as well as the attitude of the deponents and the tenor of their testimony. Crabtree v. Kurn, supra; and see Dunn v. Dunnaker, 87 Mo. 597; Woelfle v. Connecticut Mut. Life Ins. Co. of Hartford Conn., 234 Mo. App. 135, 112 S. W. 2d 865. Having offered the depositions and desiring to read parts thereof, plaintiff did not object to defendant's offer to introduce the "whole" of the depositions on the ground the testimony other than that offered by plaintiff was not competent and relevant to the issues, nor upon any other ground. Plaintiff-appellant argues that defendant's offer of the whole of the depositions (after plaintiff had offered to read parts) made the deponents the defendant's witnesses. We do not so understand the effect of the record. After the introduction of the depositions and the reading of the parts by plaintiff, defendant was entitled to read the balance of the testimony of the witnesses into evidence, to the extent the testimony was competent and relevant. Plaintiff, in effect, called the witnesses to the witness stand and elicited testimony material to his case; but plaintiff desired to further show the witnesses, whom he had, in effect, put on the witness stand, were employed by defendant's insurer and, consequently, biased in favor of

1082

defendant. In seeking to discredit the witnesses by showing their bias in favor of defendant, plaintiff was endeavoring to increase the value of their testimony to plaintiff.

We believe the trial court did not err in refusing, upon defendant's objection, to permit plaintiff to thus discredit the witnesses. Dunn v. Dunnaker, supra; Woelfle v. Connecticut Mut. Life Ins. Co., supra. See also and compare Peoples National Bank v. Hazard, 231 Pa. 552, 80 Atl. 1094; Vol. III, Wigmore on Evidence, 3d Ed., § 913, pp. 425-426.

The judgment should be affirmed.

It is so ordered. *Lozier* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur, except *Hollingsworth, J.,* not voting because not a member of the court when the cause was submitted.