**MISSOURI PUBLIC SERVICE COMPANY, a corporation, Respondent,**

**v.**

**Luther HUNT and Nellie Hunt, Appellants.**

No. 22064.

Kansas City Court of Appeals.

Missouri.

Dec. 6, 1954.

28

Vance Julian, Clinton, Julian & Conrad, Clinton, of counsel, for appellants.

Poague, Poague & Brock, Clinton, for respondent.

DEW, Judge.

This is a proceeding to condemn a right-of-way for an electric transmission line over and upon a strip of the defendants' vacant property abutting Highway 35 within the city of Clinton, Henry County, Missouri, and near the northern limits of that city. From a verdict and judgment for the defendants for their damages in the sum of $1,250, the defendants have appealed.

After the decree of the court sustaining the petition for the condemnation, the court appointed commissioners to report the amount of damages, if any, sustained by the defendants. The commissioners reported such damages in the sum of $4,500. Exceptions to the report were filed by both parties. Upon application by the plaintiff for a change of venue, the cause was then transferred to the circuit court of Bates County. By agreement the decree of the court was amended and on July 30, 1953, trial was had before a jury on the sole issue of defendants' damage, resulting in the verdict above stated. The only points raised on this appeal pertain to matters arising out of the trial of that issue.

The tract of land of the defendants which is involved in this proceeding is vacant, contains one and a half acres, and is triangular in shape, abutting on the north side of Highway 35 for a distance of 509 feet. The highway and the strip in question run northwest and southeast.

According to the decree of the court on the petition to condemn, made prior to the proceedings before the jury, the court found, among other facts not here in dispute, that the property proposed to be condemned was an easement over a strip of ground along the south boundary of defendants' tract, lying parallel to Highway 35, said strip being 49 feet in width at the northwest end of the defendants' property, and 41.2 feet wide at the southeast corner of their property, which easement was to be used for the purpose of construction, maintenance and operation of a 49 kilowatt electric transmission line over and upon said strip. The further finding was that the transmission line would consist of three steel reinforced conductors and two overhead ground wires supported by two "H" type wooden pole structures. The wires were required to be so constructed as never to be closer to the ground than 21 feet. The fee title to the strip was reserved to the defendants, subject only to the easement for the purposes specified, with ingress and egress on plaintiff's part for those purposes, the plaintiff to keep the right-of-way clear of trees, trash, buildings and other obstructions. The plaintiff was further required to maintain gates in any fences which the defendants may erect upon the strip, and the plaintiff may not interfere with the use and occupancy of the strip by the defendants. The decree further provided that the plaintiff should pay the defendants any damage to their grass, fences, improvements or to the surface of the land by the construction or maintenance of the transmission line, within thirty days after such damage, and in event defendants might lease the land for mining purposes, the plaintiff was required to relocate its transmission line so as not to

interfere with such mining operations. The decree prohibited the defendants from constructing any permanent structures on the right-of-way except at the east line thereof, but permitted defendants to locate in the area of the easement any gasoline pumps necessary to operate gasoline stations on the property. Defendants were also given the right to retain temporary vehicles or objects on the strip or use the same as a driveway or parking lot.

According to the evidence the tract of land involved begins on the north side of Highway 35, about 275 feet west of the junction of that highway and Highway 13 and lies parallel to Highway 35 for a distance of 509 feet to the northwest. The east boundary runs north from the highway for a distance of 328.9 feet, from whence the north boundary runs west 397.8 feet, to Highway 35, at the westernmost point of the tract, thus forming a right triangle abutting on Highway 35. That part of the tract constituting the west 200 or 300 feet thereof runs to a sharp point, is below the level of the highway and there is a ditch or slough which transverses that portion of the tract from the highway to the land adjoining on the north. The immediate vicinity is sparsely developed with a few industrial buildings in the community, some large and some small. There are no provisions for sewers or water supply. At and beyond the junction of the two highways there are more and larger industrial structures. The right-of-way of Highway 35 is 80 feet wide. In the exercise of its easement the plaintiff, in fact, placed no poles on defendants' property. Two poles to the east and two to the west were placed just beyond the defendants' boundaries. Only the wires, so suspended, were placed within the area of the easement. At the time in question, the lot was rented at $35 a month for the display of farm vehicles, temporarily placed upon it. The defendants had not offered the lot for sale.

The evidence was voluminous, consisting of the testimony of the owners and of other landowners in the vicinity, the testimony of real estate experts and an engineer, and the introduction of 36 photographs and several plats. The questions inquired into had to do with the availability of the defendants' tract for building purposes before and after the easement was taken, considering its size, triangular shape and position on the highway, and with the difference in value before and after the easement. There was testimony on the part of some of defendants' witnesses that the lot, before the restriction was imposed by the easement, was available for the building of an implement store, food market, tourist court, filling stations, etc., but that the average 45 foot building limit would make the lot inadequate for any business building whatever; that the values of property in the vicinity had increased since the erection of industrial buildings in the vicinity in 1946 to date. There was also testimony that the restriction would at least destroy all value of the western part of the defendants' tract. Defendants' expert witnesses Dorrance, Stone and Day testified to the value of defendants' tract before the easement and the damages sustained by the taking of the tract by the condemnation as follows: Dorrance, value $15,000–$16,000, damages $9,000; Stone, value $13,250, damages $6,583.33; Day, value $14,750, damages $9,187.50.

The evidence of the plaintiff tended to show that the mere presence of the plaintiff's wires over the strip abutting the highway would not materially affect the use or value of defendants' tract; that the west 200 feet or more of the tract running to a sharp point, was already of such size, shape and condition that building on that portion of the lot was impracticable; that much filling would be necessary on the west end of the lot to make it level with the highway; that the whole tract, as restricted, could be used for industrial building; that certain other buildings in the vicinity were located substantially as far from the highway as buildings on defendants' lot would be required since the easement. Plaintiff's expert witnesses Julian, Rucker, Peterson, Wilson and Kunkler, basing their estimate on sales of certain other property in the vicinity, or in localities claimed to be com-

parable, in 1946, 1947 and 1948, and on their experience with and general knowledge of real estate in and around Clinton, appraised the value of defendants' tract before the easement as follows: Rucker, value $3,750, damages $350; Peterson, value $2,900, damages $350; Wilson, value $4,550, damages $1,050; Julian, value $1,900, damage $250; Kunkler, value $2,700, damage $350. There was testimony on the part of plaintiff's witnesses that the clear market values in 1946, 1947 and 1948, had not materially changed by November, 1952, when the defendants' strip was taken for the easement. They also testified that there had been no sales of comparable property in the immediate vicinity since the Orchid, Robinson and Rock Village sales in 1946 and 1948.

■ Defendants' first point is that it was error to allow evidence of sales in 1946, 1947 and 1948, the same being too remote as to time, location, use and nature. Defendants objected to evidence of sales within those years. In one sale (Orchid) property was sold in 1946, which adjoined the defendants' tract on the east; another (Rock Village) was the sale in 1947 of property across the highway from the westernmost point of defendants' tract; and in 1948 the sale (Robinson) of a tract south of and just across the highway from defendants' lot. Objection was also made to evidence of a sale of industrial property on South Second Street in Clinton. The court ruled that in view of the testimony that there had been no material change in the value of such industrial property since 1946, the evidence of such sales would be admitted. The rule to be followed is stated in City of St. Louis v. Buselaki, 336 Mo. 693, 700, 701, 80 S.W.2d 853, 856: "Sales of property similarly located to that involved in the cause, and made in the neighborhood reasonably near the time in question, are admissible to aid the triers of fact in determining the damages to which the owner is entitled. Metropolitan Street Ry. Co. v. Walsh, 197 Mo. 392, 403, 94 S.W. 860; School District of Kansas City v. Phoenix Land & Improvement Co., 297 Mo. 332, loc. cit. 342, 249 S.W. 51, and cases cited".

In Kansas City & Grandview Ry. Co. v. Haake, 331 Mo. 429, 437, 53 S.W.2d 891, 894, 84 A.L.R. 1477, it was said: "Of course, sales of land of like character and similarly situated, and not too remote in point of time, are admissible on the question of value (Metropolitan Street Ry. Co. v. Walsh, 197 Mo. 392, 403, 94 S.W. 860), and considerable latitude should be allowed by the trial court in this respect, leaving to the opposite party to show, by cross-examination or otherwise, any differences which the jury should know in making the comparison". It is stated in 18 Am.Jur. at page 995, Section 351: "The determination of the similarity of the lands involved in the proffered evidence to those sought to be condemned, and whether the transactions are sufficiently close in point of time to afford a fair comparison, is a matter resting largely in the discretion of the trial court."

■ In view of the testimony of the plaintiff's witnesses as to the location, size and character of the properties cited and the dates of sales thereof, and in view of the evidence that no material change in value of such property took place since the sales referred to, we think the court properly admitted evidence of the sales of such other tracts.

Defendants next assert that the court erred in striking the testimony of defendants' witness Stone as to a sale of a certain piece of property in the vicinity to one Rolla Ferris for $35 a foot. In connection with his appraisal of the defendants' tract, witness Stone testified that he knew of the Ferris sale only from what the buyer told him. The court, on motion, struck that part of witness's testimony as pertained to the Ferris deal.

■ In City of St. Louis v. Sheahan, 327 Mo. 305, 36 S.W.2d 951, 954, the court recognized and quoted the rule stated in Nichols on Eminent Domain, Vol. 2, Second Edition at page 1189: " 'If the jury is to be aided by evidence in regard to property similarly situated, it must be by facts and not by opinions.' " "The competency

of witnesses testifying as to the value of the land taken is primarily for the court". 18 Am.Jur. page 1000, Section 355. It was not prejudicial error for the court to strike from witness Stone's testimony that part which contained hearsay evidence obtained from another person.

■ The next point urged by the defendants is that the court erred in refusing to strike the testimony of plaintiff's witness Peterson. He said he had been a real estate dealer in Clinton for eight or nine years; that although he specialized in farms and had not sold any property in Clinton since 1941, he was, however, acquainted with real estate values in the city and in the vicinity of defendants' property, and was familiar with defendants' particular tract, which he had visited and personally measured. His qualification was a matter resting in the discretion of the court, and it was not error to refuse to strike his testimony. Union Elevator Co. v. Kansas City Suburban Belt Ry. Co., 135 Mo. 353, 36 S.W. 1071.

■ Defendants further contend that the court erred in refusing to permit defendant Luther Hunt to testify that he had been offered $2,000 for the west 200 feet of the tract in question. Defendants maintain that they had a right to make such a showing in view of plaintiff's evidence that the west portion of defendants' tract was worthless. The testimony was offered by the defendants in rebuttal. Mrs. Hunt was the witness and was asked if defendants had refused an offer of $2,000 for the west 200 feet of their tract. Upon cross-examination for qualification, it was brought out that Mrs. Hunt knew nothing of such offer of her own knowledge. The court rejected this testimony as hearsay. Offer was then made to prove by defendant Luther Hunt that he had received such offer of purchase. The offer of proof was denied. Not only was the testimony of Mrs. Hunt hearsay, but proof of a mere offer to buy is not competent evidence to determine the value of real estate in such proceedings. Bungenstock v. Nishnabotna Drainage District, 163 Mo. 198, 64 S.W. 149; School District of Clayton v. Kelsey, 355 Mo. 478, 196 S.W.2d 860; City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 40 S.W.2d 661; 20 Am. Jur. page 341, Section 375. On the same issue, the law was quoted in City of St. Louis v. Gerhart Realty Co., supra, 40 S.W. 2d at page 664: " 'Oral and not binding offers are so easily made and refused in a mere passing conversation and under circumstances involving no responsibility on either side as to cast no light upon the question of value, and they are unsatisfactory, easy of fabrication, and even dangerous. While all these objections might not apply in every case, it is thought best by most courts to reject evidence of offers altogether'. (Citations.)" The ruling of the court in the instant case was proper.

■ The final point urged by the defendants is that the verdict of the jury is grossly inadequate. They point out the great disparity between the estimates of the expert witnesses of plaintiff and those of the defendants. Such disparity is not a sound reason for an appellate court to disturb the verdict in a condemnation case. One qualified witness to the larger estimate is substantial evidence. Empire District Electric Co. v. Johnston, Mo.App., 268 S. W.2d 78; City of St. Louis v. Buselaki, supra. We find no grounds that would justify our interference with the jury's determination of the amount of damages.

Judgment affirmed.

All concur.