Catherine KIRST, Plaintiff-Respondent,

v.

**CLARKSON CONSTRUCTION COMPANY,**
a corporation, Defendant-Appellant.

No. 8467.

Springfield Court of Appeals.

Missouri.

Oct. 12, 1965.

Glenn A. Burkart, Robert W. Schroff, Mann, Walter, Powell, Burkart & Weathers, Springfield, A. W. Landis, West Plains, for defendant-appellant.

H. D. Green, R. D. Moore, N. C. Brill, West Plains, for plaintiff-respondent.

STONE, Judge.

■ Plaintiff, Catherine Kirst, sued defendant, Clarkson Construction Company, for damage to a frame house in West Plains, Missouri, alleged to have been caused on April 26, 1963, by blasting on a nearby highway construction project. At the conclusion of the trial on March 5, 1965, the jury returned a unanimous verdict finding the issues in favor of plaintiff and assessing her damages at $1,150. *Defendant* filed no after-trial motion, but *plaintiff* filed a timely motion for new trial which was sustained [V.A.M.R. Rule 78.01] by the following order specifying three grounds (numbered by us to facilitate easy reference thereto): "Motion for new trial granted and for the reason the court believes [1] it erred in permitting defendant to prove the value of real estate in question in the year of 1947, [2] that it erred in permitting the evidence as to amount paid to plaintiff for real estate by the Missouri State Highway Department and [3] that because of the aforesaid, that the plaintiff was prejudiced when defendant's attorney asked that jury be permitted to view the real estate before said jury." The order granting a new trial having deprived defendant of its attained position in the litigation and of its right to conclude the suit and forever terminate its liability upon plaintiff's cause of action by paying the judgment and costs, defendant is an "aggrieved" party [V.A.M.S. § 512.020] and may maintain this appeal. Adair Coun-

ty v. Urban, 364 Mo. 746, 268 S.W.2d 801, 804–805(4); Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316, 321(6).

■ Plaintiff's motion for new trial contained nine assignments of error, to wit, the three assignments subsequently specified in the court's order granting a new trial, three assignments not here material, and three assignments pertaining to alleged inadequacy of the verdict, namely, assignment 7 that "the verdict of the jury is wholly inadequate," assignment 8 that "the verdict of the jury is inadequate and the result of the bias and prejudice of the jury against the plaintiff," and assignment 9 that "the verdict of the jury for such inadequate amount was not supported by the preponderance and greater weight of the evidence in said cause." By granting plaintiff's motion for new trial on specified grounds as directed by V.A.M.R. Rule 78.01, the trial court, in effect, overruled all other assignments in the motion,[1] including assignments 7, 8 and 9 pertaining to alleged inadequacy of the verdict. So the anomalous posture of the case, as it comes to us, is that the trial court rejected and denied plaintiff's complaints directed to the alleged inadequacy of the verdict [cf. Smith v. St. Louis Public Service Co., Mo., 277 S.W.2d 498, 502(1)] but granted a new trial to plaintiff because of alleged errors in the admission of evidence, as specified in grounds 1 and 2 of the order granting a new trial, and because of the request by defendant's counsel that the jury be permitted to view plaintiff's house, as specified in ground 3 of the order.

■ Reminding us of the well-established principle that, on appeal from an order granting a new trial, the respondent is not limited to the grounds specified in the order but may urge in support of the court's ruling any other ground properly presented and preserved in the motion for new trial and on appeal,[2] instant plaintiff-respondent here undertakes to sustain the trial court's order on the ground that "the verdict of the jury was wholly inadequate and was predicated upon evidence erroneously admitted"—essentially the complaint in assignment 7 in the motion for new trial that "the verdict of the jury is wholly inadequate," coupled with the *present* assertion of plaintiff's counsel that such alleged inadequacy of the verdict was "the inherent result" of *grounds 1 and 2* specified in the order granting a new trial.

■ The general rule is that where, as here, the jury assesses damages in a substantial (as distinguished from a nominal) amount, plaintiff will not be heard to complain upon appeal about the admission or exclusion of evidence. Stone v. Farmington Aviation Corp., 360 Mo. 1015, 1021, 232 S.W.2d 495, 499(4); Cochran v. Wilson, 287 Mo. 210, 228, 229 S.W. 1050, 1056(5). See McCormack v. McNamee, Mo., 274 S.W.2d 272, 279(10).[3] But, aside from that prin-

---

1. State ex rel. Sturm v. Allison, Mo. (banc), 384 S.W.2d 544, 547(3); Burnett v. Johnson, Mo., 349 S.W.2d 19, 24 (6); Smith v. St. Louis Public Service Co., Mo., 277 S.W.2d 498, 502(1); Bailey v. Interstate Airmotive, 358 Mo. 1121, 1128, 219 S.W.2d 333, 335(2), 8 A.L.R. 2d 710; Murphy v. Kroger Grocery & Baking Co., 350 Mo. 1186, 1191, 171 S.W. 2d 610, 611(2).

2. Dial v. Seven-Up Bottling Co., Mo., 373 S.W.2d 53, 57(6); White v. St. Louis Public Service Co., 364 Mo. 111, 116, 259 S.W.2d 795, 798(2); Eilers v. Union Elec. Co., Mo.App., 386 S.W.2d 427, 431(8); Price Bros. Lithographic Co. v. American Packing Co., Mo.App., 372 S.W.2d 138,

139(1); State ex rel. State Highway Com'n. v. Flynn, Mo.App., 263 S.W.2d 854, 856(9).

3. And so it is concerning complaints as to the giving or refusing of instructions not relating to the measure of damages [Cochran v. Wilson, 287 Mo. 210, 228, 229 S.W. 1050, 1056(5); Craton v. Huntzinger, Mo., 187 S.W. 48, 53(8); State ex rel. State Highway Com'n. v. Southern Securities Co., Mo.App., 60 S.W.2d 632, 635(9); Broughton v. S. S. Kresge Co., Mo.App., 26 S.W.2d 838, 840(6); Edwards v. Missouri Ry. Co., 82 Mo.App. 478, 482–483(2)], and as to other trial irregularities having no demonstrable con-

ciple, it is crystal clear that plaintiff's appellate position necessarily must rest and depend upon her contention that the damages assessed by the jury were inadequate. Otherwise, it could not be said that trial errors, whatever they might have been, materially affected the merits of the action and constituted prejudicially reversible error. V.A.M.R. Rule 83.13(b); V.A.M.S. § 512.160(2). And since the order granting a new trial, in effect, overruled all assignments in plaintiff's motion for new trial pertaining to alleged inadequacy of the verdict, and since the appellate presumption is that the trial court acted correctly in overruling those assignments,[4] the burden of demonstrating here that the trial court erred in so ruling rests upon plaintiff-respondent.[5]

■ Under our juridical system, determination of the amount of damages is primarily for the jury.[6] And where, as in the instant case, the trial court has overruled the assignments in the motion for new trial pertaining to alleged inadequacy of the

verdict and thus has denied a new trial for inadequacy, the rule upon appeal is that the jury's exercise of its discretion in the assessment of damages is conclusive unless the verdict is so *shockingly inadequate* as to indicate that it is the result of passion and prejudice or of a gross abuse of such discretion.[7] The appellate court does not weigh the evidence but rather seeks only to ascertain whether the trial court abused its discretion in denying a new trial for inadequacy. The appellate inquiry is whether, viewing the record in the light most favorable to the trial court's ruling on the complaint of inadequacy, it may be said fairly and reasonably that the verdict was supported by substantial evidence.[8]

With these basic principles in mind, we turn to the evidence. In 1947, plaintiff and her husband purchased and (with their children) moved into a seven-room, two-story frame house (hereinafter frequently referred to as the house) situate on a five-acre tract, of which approximately three acres were sold for highway right-of-way

nection with the amount of the verdict and not rendering it void ab initio. McCormack v. McNamee, Mo., 274 S.W.2d 272, 273(1).

4. State ex rel. Spears v. Hughes, 346 Mo. 421, 424, 142 S.W.2d 3, 5; Sakowski v. Baird, 334 Mo. 951, 956, 69 S.W.2d 649, 651; Yuronis v. Wells, 322 Mo. 1039, 1049, 17 S.W.2d 518, 523(5); Kersten v. Hines, 283 Mo. 623, 634, 223 S.W. 586, 589; Bradley v. Reppell, 133 Mo. 545, 560, 32 S.W. 645, 649, 34 S.W. 841.

5. State ex rel. Sturm v. Allison, supra, 384 S.W.2d at 547(4); O'Shea v. Pattison-McGrath Dental Supplies, 352 Mo. 855, 863, 180 S.W.2d 19, 23(8); State ex rel. Spears v. Hughes, supra, 346 Mo. at 424–425, 142 S.W.2d at 5; Schroeder v. Rawlings, 344 Mo. 630, 638, 127 S.W. 2d 678, 683(8); Sakowski v. Baird, supra, 334 Mo. at 956, 69 S.W.2d at 651; Yuronis v. Wells, supra, 322 Mo. at 1049, 17 S.W.2d at 523(6); Berkemeier v. Reller, 317 Mo. 614, 621, 296 S.W. 739, 741 (3). See Overton v. Tesson, Mo., 355 S.W.2d 909, 913(4); City of Kennett v. Katz Const. Co., 273 Mo. 279, 287, 202 S.W. 558, 560(1).

6. Spica v. McDonald, Mo., 334 S.W.2d 365, 368(1); Donahoo v. Illinois Term. R. Co., Mo., 300 S.W.2d 461, 469(10); Cruce v. Gulf, Mobile & Ohio R. Co., 361 Mo. 1138, 1150, 238 S.W.2d 674, 681(14); Coghlan v. Trumbo, Mo., 179 S.W.2d 705, 706(4); Porter v. Smoot, Mo.App., 375 S.W.2d 209, 212(2).

7. Vogrin v. Forum Cafeterias of America, Mo., 308 S.W.2d 617, 622(5); Thompson v. Healzer Cartage Co., Mo., 287 S.W.2d 791, 792(2); Conner v. Neiswender, 360 Mo. 1074, 1077, 232 S.W.2d 469, 470(2); Wilhelm v. Kansas City Public Service Co., 358 Mo. 6, 11, 212 S.W.2d 915, 918 (5); Coghlan v. Trumbo, supra, 179 S.W. 2d at 706(2); Porter v. Smoot, supra, 375 S.W.2d at 213(5, 6).

8. Miller v. Harner, Mo., 373 S.W.2d 941, 947(2, 3); Mitchell v. Mosher, Mo., 362 S.W.2d 532, 536(2, 3); Spica v. McDonald, supra, 334 S.W.2d at 368(2); Waller v. Oliver, Mo., 296 S.W.2d 44, 49(7, 8); Roush v. Alkire Truck Lines, Mo., 245 S.W.2d 8, 10(2–4); Conner v. Neiswender, supra, 360 Mo. at 1077, 232 S.W.2d at 470–471(3–5); Porter v. Smoot, supra, 375 S.W.2d at 212(3, 4).

prior to the blasting on April 26, 1963, out of which this action arose. After the death of her husband in 1954, plaintiff continued to reside in the house until November 1962, when she moved to another town. Thereafter, the house remained vacant to the time of trial.

The house was located "fifty feet or maybe a little more" north of the right-of-way of relocated U.S. Highway No. 63 which, at that point, runs through a "cut". During the late afternoon of April 26, 1963, defendant, then engaged in construction of Highway 63, set off a series of three blasts in the "cut." Plaintiff adduced evidence to the effect that the third blast was too heavy and that it caused "a terrific shock plus a lot of debris in the air" which showered upon not only plaintiff's house but also the Amyx house some fifty to seventy-five feet to the north. Upon trial, defendant did not seriously deny that the blasting had resulted in *some* damage to plaintiff's house, but there was a sharp dispute and wide divergence of opinion as to the nature and extent of damage.

■ The measure of damages in cases of this character is stated plainly in Curtis v. Fruin-Colnon Contracting Co., 363 Mo. 676, 686, 253 S.W.2d 158, 164(12): "The general rule is that the measure of damages to real estate is the difference in the value of the land before and after the injury by trespass or negligence. However, where damaged land or a building thereon can be restored to its former condition, at a cost *less* than the diminution in value, the cost of restoration may be recovered." To the same effect, see Beaty v. N. W. Electric Power Coop., Mo.App., 296 S.W.2d 921, 925(5). In the case at bar, no witness testified with respect to the difference between the reasonable market value of plaintiff's real estate (i.e., the house and the two-acre tract on which it is situate) immediately before and immediately after the blasting. *Plaintiff herself* testified as to the difference between the reasonable market value of the real estate imme-

diately before the blasting on April 26, 1963, and at the time of trial on March 5, 1965. *Plaintiff's witness Curtis Amyx* testified only as to the reasonable market value of the real estate prior to the blasting. *Plaintiff's witness John T. Boss* testified only as to what he considered *the house* to be "worth" at the time of his examination about five weeks prior to the trial, and as to his estimate of the cost of repairing it at that time. *Defendant's witness Recie Smith* testified as to his estimate in October 1963 of the cost of repairing the damage which, in his opinion, had resulted from blasting. We proceed to a review of the pertinent testimony of the four above-named witnesses.

*Plaintiff's testimony.* In 1959, plaintiff and her children "put in new ceilings" in the dining room and kitchen and papered the interior of the house. For this work, plaintiff made no cash expenditure other than for materials, and she declined even to estimate that expense. In the questions which first elicited information concerning this work, plaintiff's counsel referred to it as "some repairs to the house back in '59"; and, on cross-examination, plaintiff responded with an unqualified "yes, sir," when defendant's counsel inquired "that was what you call repair work?" At times not fixed in the record, plaintiff brought cold water plumbing into the house and (so she said) hired one Ganley to "put a new roof on." The house does not have toilet facilities, a hot water system, or central heating. Plaintiff described the house as "in good condition" and in need of no repairs when she last saw it in February 1963 prior to the blasting on April 26, 1963.

At the time of trial, plaintiff was employed at Katz Discount City in Springfield. There was no showing of previous work or experience outside the home or of any circumstance, excepting only the mere fact of her ownership of the real estate under consideration, which would have qualified or permitted her to express an opinion as to the reasonable market value of that (or any other) real estate. As the owner of the

real estate, she expressed the opinion that, immediately before the blasting, "it was worth about $6,000"; and, when asked for her opinion of "the reasonable market value of it *at the present time* [March 5, 1965]," plaintiff responded, "well, after studying it out, I doubt—maybe around $2,500 for the whole thing; maybe not even that much." On cross-examination plaintiff readily conceded that, when her deposition had been taken on February 12, 1965 (less than one month before trial), she had declared that she had no opinion as to the value of the real estate either at the time of the deposition or in June 1963, when she first saw it after the blasting.

*Plaintiff's witness Curtis Amyx* had been a postal employee for eight years prior to the date of trial. In reply to the inquiry as to whether he had "ever been engaged in the sale of real estate," Amyx said "none other than my own"; and the sole real estate transaction to which he was shown to have been a party was his purchase in 1959 of the first house north of plaintiff's real estate. The extent of his "qualification" to give opinion evidence concerning the reasonable market value of plaintiff's real estate was his agreement with the leading questions of plaintiff's counsel that he had "known of property selling out in that particular vicinity" and "what it sold for, what the purchase was on it." On this basis, the trial court reversed his initial ruling that "I don't believe the man is qualified" and permitted counsel to elicit from Amyx this opinion as to the reasonable market value of plaintiff's real estate prior to the blasting, "well, to my own opinion, I'd say $6,000, $6,500." On cross-examination, Amyx stated that he knew that plaintiff's house did not have central heating but that he did not know the age of, or the number of square feet in, the house and likewise was unaware that it lacked toilet facilities and a hot water system. Amyx had made claim against defendant for alleged damage to his house, which had resulted in a "dispute" and "court trials" about which he admittedly was not "very happy."

*Plaintiff's witness John T. Boss,* a building contractor for thirteen years, examined the house at plaintiff's request about five weeks prior to trial and then estimated "the reasonable cost of materials and labor to make necessary repairs" at $4,030.36. Without those repairs, Boss "wouldn't consider it [the house] worth over $500." On cross-examination, it was developed that Boss' estimate included the expense incident to a new foundation "all the way around the house"—"you'd have to put in a new foundation; the old one was in a crumbling condition." When Boss' attention was called to a photograph in evidence showing "quite a gap" in the foundation and he was asked whether he had found "mortar lying around . . . like it had been shaken loose" by blasting, the unresponsive reply was "well, I was asked to go out and make an estimate on this job, what I thought it would take to repair it, and I supposed that was done by the blast . . . no, I don't know." Boss did not know the age of the house but thought that it probably was twenty or twenty-five years old.

*Defendant's witness Recie Smith,* a carpenter for twenty-seven years who frequently made estimates "for insurance jobs" (a circumstance pointedly recalled to the jury in the closing argument of plaintiff's counsel), examined plaintiff's house in October 1963. He found the asphalt roof on the north side of the house "in bad shape . . . practically gone from age" and "showing the old shingle roof underneath." A new roof had been needed for "two or three years and, I believe, longer on the north side." Smith estimated at $15 the cost of repairing the one place on the roof which apparently had been damaged by falling rock. "The plaster was bad over most of the house." It was "old lime plaster on wood laths . . . around thirty years would be pretty good for this old plaster." The condition of the plaster in the second story was particularly bad by reason of not only deterioration but also leaks through the roof. Frankly acknowledging the difficulty of making a precise determination of the

damage caused by blasting as distinguished from the conditions resulting from "age and deterioration," Smith estimated that the damage to the plaster caused by blasting could be repaired for $300. Thus, his estimate of the total cost of repairing the damage to the house resulting from the blasting was $315. Smith hastened to add that this sum would not cover "by a long ways" the cost of repairing or remedying the conditions resulting "from age and depreciation." It was Smith's opinion that the house was "forty to fifty years old; it was an old building, very much run down." In his judgment, the blasting had done no damage to the foundation. He observed that "part of the foundation" was "entirely gone" but "it looked to me like it had been out for quite a long while."

Defendant introduced in evidence twelve kodak pictures of the exterior of the house, one of which plainly shows the "gap" of several feet in the foundation. Without undertaking the ‚impracticable, if not impossible, task of describing these views, it may not be inappropriate to comment that they tend to support the testimony of witness Smith as to the imprint of "age and depreciation" on plaintiff's house.

■■■ All of the evidence as to the market value of plaintiff's house [9] and as to the estimated cost of repairing the damage thereto caused by blasting [10] was opinion evidence, advisory in nature and in nowise binding upon the jury,[11] whose province it was to determine the credibility and weight thereof, [12] "in keeping with the general rule that a jury may believe all of the testimony of any witness or none of it, or may accept it in part or reject it in part, just as it finds the same to be true or false when considered in relation to the other testimony and the facts and circumstances of the case. Hutchison v. Thompson, Mo., 175 S.W.2d 903, 911(9, 10); Williams v. Ricklemann, Mo., 292 S.W.2d 276; Combs v. Combs, Mo., 284 S.W.2d 423, 426(6)." Baker v. Brown's Estate, 365 Mo. 1159, 1165, 294 S.W.2d 22, 27(13).

From the foregoing evidentiary review, it becomes apparent that, as is so frequently the case, the jury was offered a motley, incongruous assortment of views and values, but that the verdict for $1,150 was well within the range of the opinion testimony [State ex rel. State Highway Com'n. v. Warner, Mo.App., 361 S.W.2d 159, 161; Baker v. Brown's Estate, supra, 365 Mo. at 1165, 294 S.W.2d at 27] as to the cost of repairing the damage done by blasting and thus restoring plaintiff's house to its condition immediately prior thereto, which could have been done (if the testimony of defendant's witness Recie Smith was believed) for a small fraction of the diminution in value claimed by plaintiff. See again Curtis v. Fruin-Colnon Contracting Co., supra, 363 Mo. at 686, 253 S.W.2d at 164(12). In actions involving alleged damage to property, it has been held repeatedly, not only in cases where the complaint has been of an allegedly *excessive* judgment [13] but also in cases,

9. F. W. Brockman Commission Co. v. Aaron, 145 Mo.App. 307, 318, 130 S.W. 116, 119(7); Lee v. Allen, Mo.App., 120 S.W.2d 172, 174(2); Jones on Evidence (5th Ed.), § 432, p. 818.

10. 20 Am.Jur., Evidence, § 833, p. 699; 32 C.J.S. Evidence, § 546(73), l.c. 292; Jones on Evidence (5th Ed.), § 426, p. 806.

11. Sunset Acres Motel, Inc. v. Jacobs, Mo., 336 S.W.2d 473, 484(18); In re Sixth Street, 276 Mo. 158, 168, 207 S.W. 503, 504(1); Widman Investment Co. v. City of St. Joseph, 191 Mo. 459, 474, 90 S.W. 763, 767(3); Proceedings for Condemnation, Etc. v. National Engineering & Mfg. Co., Mo.App., 274 S.W.2d 490, 492(5).

12. Baker v. Brown's Estate, 365 Mo. 1159, 1165, 294 S.W.2d 22, 27(12); State ex rel. Spears v. McCullen, 357 Mo. 686, 693, 210 S.W.2d 68, 72(11); Kimpton v. Spellman, 351 Mo. 674, 684, 173 S.W. 2d 886, 892(11); Cities Service Gas Co. v. Peak, 227 Mo.App. 515, 520, 54 S.W.2d 482, 484(7).

13. City of St. Louis v. Buselaki, 336 Mo. 693, 702, 80 S.W.2d 853, 857(7); City of St. Louis v. Turner, 331 Mo. 834, 844–

such as this one, where the complaint has been of an allegedly *inadequate* judgment,[14] that the opinion testimony of one qualified witness constitutes "substantial evidence" supporting an award of damages by the trier of the facts, and likewise that a judgment should not be disturbed on appeal "because of a disparity in the testimony of witnesses or even because of a seeming preponderance of the evidence one way or another." [15]

■ In the final analysis, instant plaintiff's argument that the verdict for $1,150 was "wholly inadequate" actually is directed to the credibility of the witnesses and the weight to be accorded to their testimony, matters which were for the trier of the facts. Kansas City v. Thomson, Mo., 208 S.W.2d 216, 220(7, 8); Baker v. Brown's Estate, supra, 365 Mo. at 1165, 294 S.W.2d at 27(12-15). See Board of Education of Bowling Green School Dist. R-1 v. Harness, Mo., 338 S.W.2d 808. We have no doubt but that the verdict was supported by substantial evidence and that plaintiff has not carried her burden of demonstrating here that the trial court erred in overruling the assignments in the motion for new trial directed to alleged inadequacy of the verdict.

We are aware of the statement that "in considering the question of inadequacy (or excessiveness) of an award as tending to indicate the bias, passion or prejudice of the jury, the appellate court may consider the size of the award in connection with other matters of record having a prejudicial tendency." See Polizzi v. Nedrow, Mo., 247

S.W.2d 809, 811(3), where it was held that the "other matters" were nonprejudicial and a verdict of $100 for personal injuries did not justify a new trial. In Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S.W.2d 618, where a similar statement was made [324 Mo. at 1083, 26 S.W.2d at 624], the court was dealing with a "shockingly inadequate" verdict of $1,000 for personal injuries returned in the teeth of "an abundance of competent disinterested testimony, fair on its face, of probative value, and wholly uncontradicted" [324 Mo. at 1080, 26 S.W.2d at 623], which was explainable only by "other matters of record having a prejudicial tendency" [Polizzi v. Nedrow, supra, 247 S.W.2d at 811], i. e., by "sinister influences" invited into the case during plaintiff's cross-examination. [324 Mo. at 1083, 26 S.W.2d at 625]

In the case at bar, we lack (as heretofore pointed out) the essential predicate of a "shockingly inadequate" verdict. And the general rule being (as we have noted) that, where the jury has made a substantial award of damages, plaintiff will not be heard to complain upon appeal about the admission or exclusion of evidence [Stone v. Farmington Aviation Corp., supra, 360 Mo. at 1021, 232 S.W.2d at 499(4); Cochran v. Wilson, 287 Mo. at 228, 229 S.W. at 1056 (5); McCormack v. McNamee, supra, 274 S.W.2d at 279(10)], we well might pass without discussion grounds 1 and 2 specified in the order granting a new trial. Nevertheless, we record our findings and conclusions upon exhaustive inquiry into those matters in connection with our consideration of the size of the verdict.

845, 55 S.W.2d 942, 945-946; Union Elec. Co. of Missouri v. Simpson, Mo. App., 371 S.W.2d 673, 683; Empire Dist. Elec. Co. v. Johnston, 241 Mo.App. 759, 768, 268 S.W.2d 78, 83.

14. Kansas City v. Thomson, Mo., 208 S.W. 2d 216, 220(7); State ex rel. State Highway Com'n. v. Anderson, Mo.App., 367 S.W.2d 809, 811-812; Missouri Public Service Co. v. Hunt, Mo.App., 274 S.W. 2d 27, 31(8).

15. City of St. Louis v. Gerhart Realty Co., 328 Mo. 103, 111, 40 S.W.2d 661, 665(12); Empire Dist. Elec. Co. v. Johnston, supra, 241 Mo.App. at 768, 268 S.W.2d at 83(8); State ex rel. State Highway Com'n. v. Anderson, supra, 367 S.W.2d at 811-812. See Widman Investment Co. v. City of St. Joseph, supra, 191 Mo. at 473-474, 90 S.W. at 767(4); Vanausdol v. Bank of Odessa, 222 Mo. App. 91, 104, 5 S.W.2d 109, 116(10); Missouri Public Service Co. v. Hunt, supra, 274 S.W.2d at 31.

*Ground 1* specified in the order granting a new trial was that the court "erred in permitting defendant to prove the value of real estate in question in the year of 1947." In the course of plaintiff's cross-examination, it was shown that in 1947 she and her husband had paid $4,250 for the house and the five-acre tract on which it was situate. The essence of the objection of *plaintiff's counsel,* out of the presence of the jury, was that "before any other evidence can be introduced as to the purchase price, it is necessary for the defendant to establish that it is in the same condition, the same market—no further improvements; in other words, in the same condition it was then." So the kernel of *plaintiff's trial complaint* was that *the record was silent as to whether or not conditions or values had changed significantly* during the sixteen-year interval between plaintiff's purchase in 1947 and defendant's blasting in 1963 (hereinafter referred to as the purchase-to-damage interval), and that the question was improper because *defendant had not theretofore established affirmatively* that there had been no such significant change. The rejoinder of *defendant's counsel* was that the question was proper "at this time" in the absence of any evidence of change. The court agreed "that is the way I see it" and overruled the objection.

*Plaintiff's appellate position* is that "regardless of when the house was purchased, *the interior was completely remodeled* and cold water put into the house" and that "even an older house, if *completely remodeled on the interior* with water added, undergoes a significant change in value, which should be sufficient to destroy the probative force of the purchase price" and "this factor, plus the remoteness in point of time of the purchase, renders the purchase price paid inadmissible for any pur-

pose." (Emphasis ours) The hereinbefore-described work done by plaintiff and her children, to which plaintiff's counsel upon trial referred as "some repairs to the house back in '59" and which plaintiff herself agreed had been "repair work," thus is translated and transformed, in the quoted appellate argument, into "the interior was completely remodeled." A meticulous examination of the transcript establishes that, when plaintiff's answer as to the purchase price of her real estate was received, the record was devoid of any evidence (a) as to the condition of the house in 1947, (b) as to any change in the condition of, or any work done on, the house during the purchase-to-damage interval, excepting only the hereinbefore-described "repair work," alleged renewal of the roof, and addition of cold water plumbing, (c) as to any change in the reasonable market value of plaintiff's real estate during the purchase-to-damage interval, or (d) as to any change in the market value of similar real estate in West Plains during the same interval.

■ The case first cited, and primarily relied upon, by *both parties* in their appellate discussion of this point is State ex rel. State Highway Com'n. v. Henderson, Mo. App., 381 S.W.2d 10, in which the reported opinion of Cottey, Sp. J., altogether merits the hackneyed encomium that it was well-reasoned. As did the court in Henderson, supra, we start with "the established rule in this state, and generally, that the price an owner paid for property being condemned is admissible as some evidence of its value at the time of appropriation."[16] It is sometimes said that the rule is not applicable where other circumstances are shown which destroy the relevancy or probative value of the evidence, as where the date of

16. State ex rel. State Highway Com'n. v. Rauscher Chevrolet Co., Mo., 291 S.W.2d 89, 92, 55 A.L.R.2d 773; State ex rel. State Highway Com'n. v. Schutte Investment Co., Mo., 334 S.W.2d 241, 246; State ex rel. State Highway Com'n. v. Henderson, Mo.App., 381 S.W.2d 10, 11(1). See City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 217, 168 S.W.2d 149, 155; City of St. Louis v. Turner, 331 Mo. 834, 843, 55 S.W.2d 942, 945(3); United States v. Becktold Co., C.C.A.Mo., 129 F.2d 473, 479(14).

purchase is too remote to afford a reliable guide or where there have been marked changes in conditions and values since the date of purchase.[17] But it is irrefutably sound and logical to conclude, as the court did in Henderson, supra, 381 S.W.2d at 12(3), that: " . . . [M]ere remoteness in point of time is not the controlling factor in determining whether evidence as to the purchase price of the land is admissible. Under the rule quoted above such evidence is to be received for what it is worth, except where it appears that in the interval between the purchase and the appropriation [or the damage], whether that interval be long or short, conditions or values have changed so significantly that it can no longer be said that the purchase price is 'some evidence' of the worth of the land on the latter date. The change in conditions, not the lapse of time, is the determinative factor."

Regardless of the language used to state the general principle and delimit its applicability, many of the cases[18] confirm, indubitably by result if not expressly by language, the above-quoted holding in Henderson, supra, that "[t]he change in conditions, not the lapse of time, is the determinative factor." [381 S.W.2d at 12 (3)] As we have seen, instant plaintiff's primary emphasis has been upon an alleged change in the condition of the house itself, of which the evidentiary proof was scant indeed. Whether, by virtue of the lapse of time, there was a significant change during the purchase-to-damage period in the reasonable market value of plaintiff's house in particular or of similar residential property in West Plains in general is not a matter of which the trial court in the first instance, or this court on appeal, properly could take judicial notice. For, although there were many economic changes during that period, nevertheless we know from " 'the official

17. Rauscher Chevrolet Co., supra, 291 S.W.2d at 92; Schutte Investment Co., supra, 334 S.W.2d at 246; Henderson, supra, 381 S.W.2d at 11; City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. at 217, 168 S.W.2d at 155(14).

18. So, *on the one hand*, in State ex rel. Highway Com'n. v. Malone, Mo.App., 45 S.W.2d 84, 86(6), where the appellate court criticized admission of evidence as to purchase price, "all of the testimony" had shown that condemnees' farm had "depreciated in value" during the purchase-to-appropriation interval of "several" (apparently about ten) years—"an interval covering portions of two historic periods of depression in farm land values" [Henderson, supra, 381 S.W.2d at 12]; in State ex rel. State Highway Com'n. v. Pope, 228 Mo.App. 888, 74 S.W.2d 265, 270(15), where this court approved the trial court's exclusion of evidence as to purchase price, we took judicial notice that "property had greatly depreciated in value generally" during the purchase-to-appropriation interval of five years, most of which was during that period known as "the great depression"; and, in Shelby County R-IV School Dist. v. Herman, Mo., 392 S.W.2d 609, 614(11), where evidence of the purchase price of condemnee's farm in 1941 had been received without objection, it was said that such

evidence would have been subject to exclusion upon proper objection because "[t]he same result [as in Pope, supra] must follow where the time lapse is at least 23 years, during which period land values have greatly appreciated." *On the other hand*, in City of St. Louis v. Paramount Shoe Mfg. Co., supra, 237 Mo. App. at 217, 168 S.W.2d at 155, evidence as to the purchase price some ten years prior to appropriation was "properly to be considered for whatever it was worth . . . "; in City of St. Louis v. Turner, supra, 331 Mo. at 843, 55 S.W.2d at 945 (3), the price paid for real estate in 1920 properly was admitted as "some evidence of the value" in the condemnation proceeding terminating in the reported opinion in 1932; in United States v. Becktold Co., supra, 129 F.2d at 479 (14–16), the trial court "in its discretion properly admitted" evidence as to the purchase price fourteen years prior to appropriation, the length of the intervening period going "to the weight of the evidence, rather than to its admissibility"; and, in State ex rel. State Highway Com'n. v. Johnson, Mo., 287 S.W.2d 835, 837(2), "evidence of the purchase price paid some twenty-five years prior to the appropriation was not criticized on the ground that so long a lapse of time rendered it ipso facto irrelevant." [Henderson supra, 381 S.W.2d at 12]

records of the census,'" of which we do take judicial notice [Varble v. Whitecotton, 354 Mo. 570, 575, 190 S.W.2d 244, 246(4); Missouri Public Service Co. v. Barton County Elec. Coop., Mo.App., 353 S.W.2d 818, 819(1)], that the population of 37 of the 44 counties within the territorial jurisdiction of this court declined during the decade from 1950 to 1960, and that, although the city of West Plains experienced a healthy gain in population from 4,918 to 5,836 persons during that decade, the population of Howell County (including West Plains) declined during the same period. And it is a matter of common knowledge that the reasonable market value of residential properties (of the same general character as plaintiff's real estate) in some towns and communities in Southern Missouri has depreciated and in others has not appreciated significantly, if at all, during the period under consideration. For that matter, there have been divergent trends in the market value of frame residential structures in different areas of the same town. The matter of changes or trends in the reasonable market value of various categories of real estate in different towns and communities simply is not a subject which permits of easy, reliable generalization or of confident judicial knowledge without competent evidentiary proof.

■ When instant plaintiff was asked as to the purchase price of her real estate, "there was nothing in the record to indicate that it had appreciated perceptibly in value since the date of its purchase or that conditions in any other respect had changed so materially that its purchase price could no longer be regarded as 'some evidence of its value at the time of the [damage].'" Henderson, supra, 381 S.W.2d at 12. With the record in that state, the trial court was vested with some measure of

judicial discretion as to whether the proffered evidence should be received or rejected [United States v. Becktold Co., C.C.A.Mo., 129 F.2d 473, 479 (16)]; and, mindful that we have found no Missouri case in which the judgment has been set aside on account of either reception or rejection of evidence as to purchase price [see the cases cited marginally in notes 16 and 18], we are of the opinion that, in admitting such evidence in the case at bar, the trial court was not guilty of an abuse of discretion and did not commit prejudicial error.

■ We have not overlooked the fact that, on redirect examination of instant plaintiff (subsequent to her testimony on cross-examination as to the purchase price of her real estate), counsel asked her to "state to the jury whether or not residence property in West Plains has increased much in value since '47 to the present time" and, over defendant's objection, plaintiff, utterly unqualified to give opinion testimony on that subject (insofar as the record shows), answered "yes, sir, it has." Her counsel immediately followed with an inquiry as to whether plaintiff "had had opportunities to sell this property" prior to the blasting; and, when she agreed that she had, counsel put the grossly improper question,[19] "would you tell the jury the amount of that; was that $8,000," and evoked a confirmatory "yes, sir," before defendant's objection was sustained and the jury was instructed to disregard. As in Henderson, supra, if plaintiff's counsel thought that, in the light of their client's opinion that residence property in West Plains had increased in value since 1947, "a sufficient showing had been made to deprive the previously proven purchase price of all evidentiary value, then it was their duty to call that circumstance to the court's attention and move to strike the

19. Mayor, etc. of City of Liberty v. Boggess, Mo., 321 S.W.2d 677, 682(6); State ex rel. State Highway Com'n. v. Clevenger, 365 Mo. 970, 980–981, 291 S.W.2d 57, 63(3, 4); School Dist. of Clayton v. Kelsey, 355 Mo. 478, 484, 196 S.W.2d 860, 863(5); City of St. Louis v. Gerhart Realty Co., supra, 328 Mo. at 109, 40 S.W.2d at 664; Missouri Public Service Co. v. Hunt, Mo.App., 274 S.W.2d 27, 31(6).

testimony as to the purchase price of the [real estate], on the ground that it had become 'incompetent and inadmissible . . .'; and, 'having failed to so proceed,' they have 'precluded our determination of the question of whether the evidence was inadmissible by reason of the subsequent testimony of [plaintiff].' State ex rel. State Highway Commission v. Rauscher Chevrolet Company, supra, 291 S.W.2d 92; Malone v. Harlin, 220 Mo.App. 102, 278 S.W. 806, 808." [381 S.W.2d at 13]

■■■■■ *Ground 2* specified in the order granting a new trial was that the court "erred in permitting the evidence as to amount paid to plaintiff for real estate by the Missouri State Highway Department." After plaintiff had testified that she had sold 2.96 acres of the original five-acre tract, she was asked "you sold that to the State, didn't you . . . as right-of-way it purchased . . . for $2,250" and answered "yes, sir," before plaintiff's counsel said "we object to that and ask that it be stricken out as not proving any issue as to damages to this residence," and the court responded, "sustained; what she received for it from the State will be stricken from the record, and the jury is instructed to disregard it as to what she was paid for it."

It must be apparent that, in the first place, the transcript affords no support for ground 2 as stated, because the court did *not* "permit" this evidence in any sense of that term but, on the contrary, immediately sustained the objection thereto, struck the evidence from the record, and proceeding beyond the request of counsel instructed the jury to disregard. Furthermore, it has long been the rule that, save in exceptional circumstances,[20] it is sufficient to direct the jury to disregard evidence improperly admitted, the presumption being that the jury followed the court's direction;[21] and some of the cases suggest that this rule is particularly applicable where, as in the instant action, there has been no motion for a mistrial on account of the objectionable evidence.[22] The record before us reflects no exceptional circumstances which would take the case at bar without the operation of the stated rule.

■■■■ The gravamen of plaintiff's appellate complaint is that the alleged inadequacy of the verdict was "the inherent result" of *"evidence erroneously admitted"* as stated in *grounds 1 and 2* specified in the order granting a new trial. Therefore, we will not further extend this already intolerably long opinion by detailed discussion of *ground 3*, i. e., "that because of the afore-

20. E.g., Spears v. Schantz, 241 Mo.App. 879, 246 S.W.2d 399, 409–410(13, 14); City of Gallatin ex rel. Dixon v. Murphy, Mo.App., 217 S.W.2d 400, 408–409(14); National Cash Register Co. v. Kay, Mo. App., 119 S.W.2d 437, 440(4, 5); Chenoweth v. Sutherland, 141 Mo.App. 272, 124 S.W. 1055, 1056(5, 6).

21. Welch v. Thompson, 357 Mo. 703, 210 S.W.2d 79, 86(15–18); Evans v. Missouri Pac. R. Co., 342 Mo. 420, 426–427, 116 S.W.2d 8, 10(4, 5); Grott v. Johnson, Stephens & Shinkle Shoe Co., Mo., 2 S.W.2d 785, 787–788(1, 2); Salmons v. St. Joseph & G. I. Ry. Co., 271 Mo. 395, 197 S.W. 35, 36(3); Harrison v. Kansas City Elec. Light Co., 195 Mo. 606, 635, 93 S.W. 951, 960(6), 7 L.R.A.(N.S.) 293; Lithegner v. City of St. Louis, Mo.App., 125 S.W.2d 925, 930–931(8); Eth v. Kansas City, Mo.App., 63 S.W.2d 203, 205–206(3); Robinson v. McVay, Mo.

App., 44 S.W.2d 238, 240(6); Karst v. Chicago Fraternal Life Ass'n., Mo.App., 40 S.W.2d 732, 735–736(3, 4), certiorari denied 284 U.S. 664, 52 S.Ct. 40, 76 L. Ed. 562; McCarter v. Burger, Mo.App., 6 S.W.2d 979, 981(4); Hamm v. Chicago, B. & Q. R. Co., 211 Mo.App. 460, 245 S.W. 1109, 1113(7).

22. Moses v. Kansas City Public Service Co., 239 Mo.App. 361, 376, 188 S.W. 2d 538, 546–547; Hanson v. City Light & Traction Co., 238 Mo.App. 182, 200, 178 S.W.2d 804, 812. See also Stith v. J. J. Newberry Co., 336 Mo. 467, 487, 79 S.W.2d 447, 457; 5A C.J.S., Appeal and Error, § 1737b, l.c. 1053. Contrast City of Gallatin ex rel. Dixon v. Murphy, supra, 217 S.W.2d at 408, and National Cash Register Co. v. Kay, supra, 119 S.W.2d at 439, where motions for mistrial were made and denied.

said [grounds 1 and 2], that the plaintiff was prejudiced when defendant's attorney asked that jury be permitted to view the real estate before said jury." Granting that it would have been "better practice" for this request to have been made out of the presence of the jury [City of St. Louis v. Worthington, 331 Mo. 182, 196, 52 S.W.2d 1003, 1010], it was handled and ruled so carefully and tactfully by the court that it is to us inconceivable that the matter of the request and the refusal thereof could have constituted error prejudicial to plaintiff. Compare Smith v. St. Louis Public Service Co., supra, 277 S.W.2d at 502(4); Heggeman v. St. Louis Public Service Co., Mo. App., 255 S.W.2d 99, 104(3–5). Furthermore, plaintiff is in no position to complain about this matter, in view of the fact that, although still objecting to the fact that the request had been made in the presence of the jury, plaintiff's counsel told the court, *out of the presence of the jury*, that "we have no objection to the jury inspecting the place."

■ It is true that, as instant plaintiff emphasizes, appellate courts are liberal in sustaining orders granting new trials.[23] But, although the trial court, in passing upon a motion for new trial, is invested with a considerable measure of discretion in passing upon questions of fact and matters affecting the determination of such questions, the discretion contemplated by the law is "a wise, judicial discretion" [Stark v. St. Louis Public Service Co., Mo.App., 211 S.W.2d 500, 504], not to be exercised arbitrarily or injudiciously by setting aside a verdict without the showing of some legal ground affording proper basis for such action.[24] "In other words, it is not enough that [the trial court] merely be dissatisfied with the verdict, but it must have some good and compelling reason to warrant its dissatisfaction." Stark v. St. Louis Public Service Co., supra, 211 S.W.2d at 504. And, no matter what the ground may be upon which it undertakes to act, a trial court is never justified in vacating a verdict except for error prejudicial to the party moving for a new trial.[25]

Overruling all assignments in plaintiff's motion for new trial directed to alleged inadequacy of the verdict, the trial court did not find the verdict either shockingly inadequate or (as plaintiff asserted) "wholly inadequate"; and neither do we, after carefully considering the size of the verdict in connection with the "other matters of record" [Polizzi v. Nedrow, supra, 247 S.W.2d at 811] said by plaintiff's counsel to have constituted "sinister influences" [Grodsky v. Consolidated Bag Co., supra, 324 Mo. at 1083, 26 S.W.2d at 625] which "tainted the verdict." Doubting (as we do) that the order granting a new trial could have been sustained anyway on the three grounds specified in the order, it is unnecessary for us to rest our decision on a ruling to that effect. For, regardless of that, the order granting a new trial was patently improvident and unjustified when the trial court did not find, and we cannot say, that the verdict was either shockingly inadequate or "wholly inadequate." This was a compara-

23. Mochar Sales Co. v. Meyer, Mo., 373 S.W.2d 911, 916(10); Stone v. Engler, Mo., 349 S.W.2d 38, 41(2); Shaffer v. Sunray Mid-Continent Oil Co., Mo., 336 S.W.2d 102, 106(1); Trump v. Ballinger, Mo., 317 S.W.2d 355, 357(2).

24. Bailey v. Interstate Airmotive, Inc., supra, 358 Mo. at 1134, 219 S.W.2d at 339 (10); Mavrakos v. Mavrakos Candy Co., 359 Mo. 649, 657–658, 223 S.W.2d 383, 386; Miller v. Dowling, Mo.App., 360 S.W.2d 345, 349(7); Wallace v. Whitzel, Mo.App., 324 S.W.2d 157, 160(4); Heggeman v. St. Louis Public Service Co., Mo.

App., 255 S.W.2d 99, 104(3); McDonald v. Heinemann, Mo.App., 141 S.W.2d 177, 182(8).

25. Smith v. St. Louis Public Service Co., supra, 277 S.W.2d at 502(3); State ex rel. Missouri Mut. Ass'n. v. Allen, 336 Mo. 352, 359, 78 S.W.2d 862, 865(5); Wallace v. Whitzel, supra, 324 S.W.2d at 160(2); Heggeman v. St. Louis Public Service Co., supra, 255 S.W.2d at 104 (4); Stark v. St. Louis Public Service Co., Mo.App., 211 S.W.2d 500, 505(6); McDonald v. Heinemann, supra, 141 S.W. 2d at 181(5).

tively simple case with a single principal issue, which was well and vigorously tried on each side by skillful, adroit, experienced counsel who neither sought nor gave quarter. There should be an end to the controversy.

It is the judgment of this court that the order of the circuit court granting a new trial to plaintiff be set aside, that the cause be remanded to the circuit court with directions to reinstate the verdict of the jury and to enter judgment thereon, and that the costs of this appeal be taxed against plaintiff-respondent.

RUARK, P. J., and HOGAN, J., concur.