Mike FORD, a minor, by his next friend,
Sally Ford, and Henry Ford, Plain-
tiffs-Appellants,

v.

Fred LONG, Defendant-Respondent.

No. 9631.

Missouri Court of Appeals,
Springfield District.

Sept. 23, 1974.

R. Jack Garrett, Michael L. Shortridge,
West Plains, for plaintiffs-appellants.

John Alpers, Jr., Cabool, for defendant-
respondent.

BILLINGS, Judge.

The solitary issue in this appeal by mi-
nor plaintiff Mike Ford is whether or not
the damages awarded him for his personal
injuries are inadequate. Mike sought dam-
ages of $6500.00 and the jury awarded
him $1,000.00. His father, in a separate
court for Mike's medical expenses, asked
for $900.00 and had a verdict for $251.23.[1]
We affirm.

On April 3, 1972, Mike (19 years old)
was driving his automobile on a highway
near West Plains when it was struck near-
ly head-on by a vehicle driven by the de-
fendant. Mike received a cut on his chin,
he "bumped" a tooth on the steering wheel,
his legs were bruised, and his neck, back
and arms were hurting. He received
emergency treatment from a Dr. Pritchard
at the West Plains hospital following the
collision but was not hospitalized. Mike
saw Dr. Pritchard on April 7 and April 27
at which latter time the doctor released
him for return to work effective May 1.
Sometime during the period Mike was un-
der Dr. Pritchard's care the physician pre-
scribed some unidentified type of medica-
tion for Mike's use and the prescription

1. The record reflects that $40.00 of this
sum was for mileage for two trips to Spring-
field and $85.00 for Mike's examination by
his medical expert, Dr. Tietjen.

was refilled one time. Dr. Pritchard was not called as a witness at the trial.

The day following the collision Mike journeyed to Springfield for "x-ray and things" and returned to West Plains the same day. At some unascertained dates Mike consulted with a Dr. Stoll and a Dr. McIlhaney concerning his injuries. Neither of these individuals testified.

Dr. Harry Kelly, Mike's regular dentist, saw Mike on April 24 and November 28 of 1972. "He had had a blow to his two center incisor teeth. There was no particular pain. The upper left central was slightly mobile and the x-ray showed a possible fracture . . . of the root of the upper left central incisor. . . . He had a blow to his tooth that broke the root about a third of the way from the tip of the end of it." Remedial treatment for the condition was described by the dentist as either a root canal procedure costing approximately $100.00 or replacement of the tooth with a bridge at a cost of $300.00 to $400.-00. Neither procedure had been performed by the dentist at time of trial, August 1973.

At the request of Mike's attorneys he was examined by Dr. Fred O. Tietjen, orthopedic surgeon of Jefferson City, on October 27, 1972. Dr. Tietjen's deposition was received as part of the plaintiffs' evidence. The medical expert testified that at the time of his examination Mike's only complaint was with reference to his back. According to the doctor Mike said he had not had any neck ache for several months but that he continued to have an ache in his back which was aggravated by lifting, sitting for long periods of time, and, riding in a car.

The Jefferson City specialist stated his physical, neurological and x-ray examination of Mike was negative as to any injury or abnormality of the neck or back areas. Based on the history related by Mike and

his complaints since the accident, the doctor was of the opinion that Mike had sustained an "acute sacral lumbar sprain" of the back as a result of the collision. This was further described by the doctor as being a soft tissue injury which had "a degree of permanency." Dr. Tietjen did not prescribe any medication or treatment for the described condition and readily acknowledged there were no objective findings of any physical disability or injury.

Prior to the collision Mike had been employed as a stock fitter at the International Shoe Company. His hourly wage was $1.-60 per hour and he worked twenty-seven to forty hours weekly. After being released by Dr. Pritchard, Mike returned to his job about the first of May and it was his approximation that he had lost $250.00 in wages by reason of injuries. Mike left his job at International in July and went to work for Southwest Truck Body in September where he operated a band saw at an hourly rate of $2.39.[2] He was laid off by Southwest in December and he commenced working for Sterlings in February of 1973 at an hourly rate of $1.70 but by the time of the trial in August he was earning approximately $500.00 monthly as assistant manager of Sterlings at Union City, Tennessee.

Mike testified that he was no longer having any problems with his neck but that as a result of the collision he had a residual scar on his chin, his tooth hurt when he bit something hard, and, he had "throbbing pain" in his low back when he was on his feet for prolonged periods of time. He said his back also hurt him when he lifted, did anything physically strenuous, and when he rode in an automobile for any length of time. His mother and roommate of two months at Union City both testified as to what they had observed with respect to Mike's difficulty with his back and complaints they heard him voice concerning his back hurting him.

---

2. Mike did not deny that he told International he was leaving that employment for a better paying job or that in his written application for work with Southwest he stated he did not have any physical disabilities.

In this appeal Mike's point is presented thusly: "The verdict of the jury was against the greater weight of the evidence and was so inadequate as to warrant the granting of a new trial on the issue of damages and the trial court abused its discretion in refusing to sustain the motion for a new trial."

With due candor Mike's attorneys recognize the appellate hurdle that the amount of damages is primarily a question determinable by the jury and that the discretion of the trial court in refusing a new trial on the issue of damages is not to be disturbed on review unless we consider the verdict to be so shockingly inadequate as to indicate that it resulted from passion and prejudice on the part of the jury. Conner v. Neiswender, 360 Mo. 1074, 232 S.W.2d 469 (1950); Kirst v. Clarkson Construction Company, 395 S.W.2d 487 (Mo.App.1965).

■ Nevertheless, counsel attempt to sustain the foregoing contention by directing our attention to various cases in which new trials had been granted by reason of inadequate verdicts and our appellate courts sustained such orders. Here, however, by denying Mike's motion for a new trial on the issue of damages, the trial court *approved* the verdict and rejected the contention that the verdict was against the weight of the evidence. In this posture, our inquiry is "[W]hether, viewing the record in the light most favorable to the trial court's ruling on the complaint of inadequacy, it may be said fairly and reasonably that the verdict was supported by substantial evidence." *Kirst*, supra, 395 S.W.2d at 491; Shepherd v. St. Louis-San Francisco Railroad Co., 510 S.W.2d 432, 434 (Mo.1974).[3]

■ We are admonished by the authorities just cited that despite an appellant's invitation or judicial temptation it is not our function to weigh the evidence to resolve the issue before us. Both *Kirst* and *Shepherd* advise that we seek only to ascertain whether the trial court abused its discretion in denying a new trial for inadequacy of damages, keeping in mind that the jury's exercise of its discretion in the assessment of damages is conclusive unless the verdict is so *shockingly inadequate* as to indicate that it is the result of passion and prejudice or a gross abuse of that discretion.

■ The nature and extent of Mike's injuries were contested by the defendant and the jury, properly so, resolved the amount of damages Mike was entitled to receive for his injuries. As pointed out by Stone, J., in the *Kirst* case at p. 495 of 395 S.W.2d: "In the final analysis, instant plaintiff's argument that the verdict . . . was 'wholly inadequate' actually is directed to the credibility of the witnesses and the weight to be accorded to their testimony, matters which were for the trier of the facts. . . ."

■ On the record before us we cannot say that the $1,000.00 verdict was grossly or shockingly inadequate. We are of the opinion that the verdict was supported by substantial evidence and that plaintiff Mike Ford failed to clear the burdensome hurdle of demonstrating that the lower court erred in denying his motion for a new trial on the damage issue.

The judgment is affirmed.

HOGAN, C. J., and STONE, TITUS, and FLANIGAN, JJ., concur.

---

3. In Shepherd v. St. Louis-San Francisco Railroad Co., plaintiff sought damages of $100,000.00. Medical bills totaled $1600 plus. Nature and extent of injury were contested. Verdict of $2500.00 held to be not "grossly or shockingly inadequate."